# WHEELING.

CAPEHART EX'OR &C. VS. HALE.

.1873.
June Term.

JAMES CAPEHART, DESCRIBED AS PERSONAL REPRESENTATIVE OF JAMES CAPEHART, DEC'D, PLAINTIFF AND APPELLEE, *against* JOHN P. HALE, DEFENDANT AND APPELLANT.

Decided July 17th, 1873.

## SYLLABUS.

In a bill in equity preferred by an executor, as such, he ought to describe himself as the executor of his testator.

It is not proper for an executor who sues, to describe himself merely as "personal representative" of a person deceased.

The promise or agreement by one person to convey or transfer land or an interest therein to another, and either the actual payment by the latter of the consideration, or the promise or agreement by him to pay it, together, constitute an executory contract for the sale of land.

1873.
June Term.

The whole contract—including the consideration—need not be in wri-
ting. But so much as is required to be embodied, memorized or
noted in writing, must be signed by the party to be charged by
the contract.

When under a contract not signed by the purchaser, he has taken pos-
session, a court of equity, at the instance of the vendor, will decree
specific execution.

Without such taking or retaining of possession, though the contract
was signed by the vendor, and accepted by the purchaser, the for-
mer cannot, merely by reason thereof, enforce the contract
against the latter.

When a party who has made and signed a contract in writing for the
sale of land, sues a purchaser for specific execution, in order to en-
force a sale of the land and application of the proceeds to the satis-
faction of the consideration, he should allege that the defendant
promised or agreed to pay the consideration.

The plaintiff, however, need not allege that the contract or agreement
to pay the consideration, was in writing and signed by the de-
fendant,

But if the defendant, by answer, denies the promise or agreement, on
his part, or if, by plea or answer, he admits the contract, but relies
on its not having been in writing and signed by him, the plaintiff
must prove that the contract was made in writing and signed by
the defendant.

Or if neither the contract, nor any memorandum or note of it, was in
writing signed by the defendant, but under the contract he took
possession of the land, and committed waste thereon, or did such
act of part performance as to entitle the plaintiff to a specific exe-
cution, the plaintiff should allege the fact, either in the original
bill, or, after the plea or answer, in an amendment.

To the bill of an executor to obtain specific execution of a contract for
the sale of land, the heir, upon whom the legal title descended, or
the devisee to whom by the will it was given, should be a party.
It should not, by the bill, be left in doubt, whether the title of the
decedent passed to a party to the suit, or not.

When a defendant demurs to a bill and the demurrer is overruled and
the defendant is ordered to answer, and he appeals, and the ap-
pellate court reverses the order, it remands the cause, with leave
to the plaintiff, to amend the bill.

The case is stated in the opinion of the Court.

*Lamb* for Appellant.

*Smith* and *Knight* for Appellee.

Hoffman, Judge.

1873.
June Term.

Capehart,
Ex'or &c.
v.
Hale.

In a bill in equity preferred by an executor, as such, he ought to describe himself as the executor of his testator. He should do this, in order that the defendant may be informed as to the particular character in which he professes to act, and may conveniently ascertain and approve or controvert the reality of the character, and the consequences resulting from it; and that the court and clerk may conveniently shape and enter the decree in conformity to the statement. It is not proper for an executor who sues, to describe himself merely as "personal representative" of a person deceased.

If in the introduction of a bill, one who is actually an executor, mention himself simply in his own character—not as executor—and so make his complaint, though afterwards, in the statement of facts to maintain the complaint, he shows that he happens to be the executor of a person who made his will and died, and as such has a cause of suit against the defendant, this does not change the character of the plaintiff and transform the bill into one preferred and prosecuted by the executor of that testator, in his executorial capacity. The Legislature, in the Code, for the convenience of general reference to the several classes of persons representing others who are dead, each subject for the most part to the same regulations, grouped the different classes under the general phrase "Personal Representatives," and, in effect, declared that in the construction of statutes, this phrase should apply to each of the several classes, unless a different intent should appear from the context. From this however, it by no means follows that a pleader, whose province is to specify the character of the parties as well as other facts material in the particular case in hand, should be content to adopt the generically descriptive language of the statute. Such designation is not sufficiently specific to answer the purposes of pleading.

A part of the statute of frauds and perjuries in force in this State, as found in the Code, is as follows:

"No action shall be brought * * * to charge any person * * * upon a contract for the sale of real estate, or the lease thereof for more than a year * * * unless the contract, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or his agent. But the consideration need not be set forth in writing. and it may be proved (when a consideration is necessary) by other evidence." Ch. 98, p, 535.

The promise or agreement by one person to convey or transfer land or an interest therein to another, and either the actual payment by the latter of the consideration, or the promise or agreement by him to pay it, together, constitute an executory contract for the sale of land. The whole contract—including the consideration—need not be in writing. But so much as is required to be embodied, memorized or noted in writing, must be signed by the party to be charged by the contract. When this is signed by but one, he alone is thereby made liable— the other is not. Without the signing by the purchaser, he is no more bound by the contract than, in such case, the vendor would be bound.

When under a verble contract, or one committed to writing signed by the purchaser, but not by the vendor, the purchaser, without objection from the vendor, has taken possession of the land and occupies such position that he would be injured, if the contract were not executed, a court of equity at his instance will decree specific execution of the contract. And, so, when under a contract not signed by the purchaser, he has taken possession, the Court at the instance of the vendor, will decree specific execution. This is done that a statute enacted to prevent the perpetration of fraud, may not be made the means of promoting it. But, without such taking or retaining of possession, though the contract was signed by the vendor and accepted by the purchaser,

the former cannot, by reason thereof, enforce the contract against the latter.

With the research that I have had the opportunity of making, I have found no case in which the necessity of the purchaser's signing the contract for the sale of land when not relieved by part performance, or in which the character of the part performance that would sustain the contract in favor of a vendor seeking specific execution against a purchaser who had not signed it, has been discussed in any manner very satisfactory. I have however, found many English and American cases, involving questions as to whether contracts for the sale of lands made by auctioneers, were within the scope of the statute of frauds and perjuries, and whether the auctioneer was the agent of the party sought to be charged, and by the memorandum of the sale with the name of the purchaser written by the auctioneer, he legally bound the purchaser as if the latter in person had signed the memorandum ; in which class of cases, it has been uniformly conceded that the statute applies to the purchaser, and that he with his own hand, or by that of the auctioneer on some other person as his agent, must sign the contract, memorandum or note; or he will not be bound by it. Walker *vs.* Constable, 1 B & P. 306; Emmerson *vs.* Hellis, 2 Taunt. 38; White *vs.* Proctor, 4 Taunt. 209; Coles *vs.* Trecothick, 9 Ves. jr. 234, see 249; Buckmaster *vs.* Harrop. 13 Ves. jr. 456, sec. 472 *et seq;* Brent *vs.* Green, 6 Leigh. 16 ; Smith *vs.* Jones, 7 Leigh, 165; Smith, admr. *vs.* Arnold, 5 Mason, 414; Bent and another *vs.* Cobb and another, 9 Gray, 397.

Soon after the enactment of the English statute on this subject, as early as the year 1664, there appears to have been in the High Court of Chancery, a case decided, which perhaps should be noticed. It is Hatton *contra* Gray. One report of it, is this :

" Hatton sold houses to Gray for 2,000£. Note was made by Hatton of the agreement, signed by Gray, but not by Hatton.

1873.
June Term.

Capehart,
Ex'or &c.
v.
Hale.

Mr Solicitor. The note binds not him who signed it not, for the statute of frauds and perjuries, &c., and therefore in equity can not bind the other party, for both must be bound, or neither of them, in equity.

But decreed contrary." 2 Chan. Cas., 164.

Another account of the case is this:

"A sold houses to B for 2,000£. A note was made by A of the agreement and signed by B only; and it was objected, that this was within the statute, and that the note binds not him who did not sign it; and that they must be both, or neither, bound in equity; but it was decreed that they were both bound." 36 Car. 2, Eq. Cas. Abr, p. 21, s. 10.

According to one of these meagre reports, each of of which is here quoted in full, it would seem to have been decided merely, that when one party to the contract had signed it, he was bound by it, though the other has not signed, and therefore is not bound. But according to the other statement, it appears to have been held that as one party signed the contract and was bound by it, the other party who did not sign it was also bound.

The doctrine as to the necessity of mutual liability under the statute of frauds, formerly maintained, has long since been abandoned. In the year 1802, in the case of Seton vs. Slade, Lord Eldon said: "This agreement is signed by the defendant Slade only; but that makes him, within the statute, a party to be charged." 7 Ves. Jr. 265, see. 275. And in numerous cases since, both English and American, courts have held and declared the same doctrine. 2 Lom. Dig., 33; Browne on Stat. Frauds, secs. 365–6 and notes and cases cited ; Champlin and Jones vs. Parrish, 11 Paige, 410.

In the year 1721, Lord Chancellor Macclesfield considered and decided the case of Hawkins vs. Holmes. It is this:

" The plaintiff agreed with the defendant to sell him a house for 640£, and by consent of both parties an

attorney was employed to make a draft of the convey-
ance, which the attorney accordingly prepared and sent
to the defendant, who made several alterations therein
and delivered it back to the attorney to be engrossed;
whereupon a time was appointed for the plaintiff and
defendant to meet at a tavern to execute the writings,
and for the latter to pay the money.

"The plaintiff and his attorney came to the tavern,
where the plaintiff executed the writings, and having
got the conveyance registered, brought this bill against
the defendant to compel him to pay the purchase
money."

The Lord Chancellor said : "Unless in some particu-
lar cases where there has been an execution of the con-
tract, by entering upon and improving the premises, the
party's signing the agreement is absolutely necessary for
the completing it; and to put a different construction on
the act would repeal it." 1 P. Wms., 770.

Commentators of high authority seem to understand
the case of Hatton vs. Gray somewhat variantly. Most,
if not all of them, however, draw from that as well as
the case of Hawkins vs. Holmes, and other cases decid-
ed about the same time and at a later date, conclusions
entirely consistent with the law as I have stated it.

Mr. Newland, in his Treatise on Contracts in Equity,
says :

"It will be observed, that the act does not require,
that both parties should sign the agreement, but only
the party to be charged therewith. An agreement, there-
fore, though signed only by the defendant, will be en-
forced; the plaintiff, in his bill, consenting to perform
his part of the contract. But where the agreement has
been signed only by the person who applies to the court
for an execution of it, a specific performance will not
be decreed; as such a case is exposed to the very mis-
chief which the statute intended to prevent. It seems,

however, that a doubt once existed on this subject; but it has long ago been removed." P. 171.

"Lord Cowper, in the case of Bawdes *vs.* Amherst, observed, that he knew no case, where an agreement, though it were all written with the party's own hand, had been held sufficient, unless it had been likewise signed by the party; saying that the party's not signing of it was evidence that he did not think it complete.

"The case of Stokes *vs.* Moore, supports the idea of Lard Cowper, that the party's writing the agreement with his own hand, is not a sufficient signature." P. 173.

Mr. Powell, in his Essay on Contracts, referring to the case of Hatton *vs.* Gray, says:

"Thus, where A sold houses to B for two thousand pounds; and A drew up a note of the agreement in writing, which B signed, but A did not sign; it was objected on a bill by A against B to compel him to a specific execution of this agreement, that this was within the statute; for, the note bound not him that did not sign it, and they must be both, or neither, bound in equity. But it was decreed that B was bound thereby; for A's drawing up the agreement in his own hand, and procuring B to sign it on his part; made the signing of B not only a signing for himself, but also a signing as authorised by A to close the agreement; and, therefore, as, if B had come into a court of equity against A the court would have decreed the agreement against him, so would it likewise decree it against B on a bill filed by A." P. 172–3.

What effect the action of one party, himself preparing the writing and procuring the signature of the other, may have, need not now be considered. According to later authorities, this would seem not to be regarded as a signing by the vendor.

Professor Lomax, in his Digest of the Law of Real Estate says:

1873.
June Term.

Capehart,
Ex'or &c.
v.
Hale.

"In the case of Hatton vs. Gray, 36, Cha. 2nd. and also in the case of Coleman vs. Upcot, it was held that an agreement, signed by the party to be charged with the same, was sufficient; and that it was not necessary for an agreement to be signed by both parties. This doctrine has been assented to in modern cases. But when the agreement has been signed only by the person who applies to the court for the execution of it, a specific performance will not be decreed; as such a case is exposed to the very mischief which the statute intended to prevent. The doubt which it seems once existed on this subject, has long ago been removed.

"It has been held, that the circumstance of the articles having been drawn by the agent of the party who is sought to be bound by them, is not equivalent to a signature within the meaning of the statute. It is said by Lord Cowper, that he knew of no case where an agreement, though all written with the party's own hand, had been held sufficient, unless it had been likewise signed by him; that the party's not signing was evidence that he did not think it complete; that he had left it to an after consideration, and might make alterations or additions to it; therefore, unless it was signed by him, or something equivalent done, to show that he looked upon it as completed, he thought such writing by the party himself was not sufficient, within the statute, to bind him." 2 Lom. Dig. 33.

In New York, about the year 1821, Gale sued Nixon in assumpsit for the price of land bargained and sold, the possession of which was given, and relied on articles of agreement originally signed by himself alone, upon which, however, was an endorsement signed by the defendant. In the Supreme Court, Mr. Justice Sutherland said: "It is not necessary, in this case, to decide whether the action could be sustained merely upon the signature of the plaintiff to the contract, and the acceptance of it, together with the possession of the land by

the defendant; though I am inclined to think it could. 1 Eq. Cas. Abr. 21, sec. 10; 1 Powell on Con. 286; Ballard *vs.* Walker, 3 John. Cas. 60; Roget *vs.* Merritt and Clapp, 2 Caines, 120, per Spencer, J.; 1 Fonbl. 165–6. But the endorsement on the back of the contract, signed by both of the defendants, is clearly sufficient to take the case out of the statute." Gale *vs.* Nixon and Nixon, 6 Cowen, 445, see 448.

I find no other authorities than those already noticed, tending to support the suggestion that under the English or Virginia statutes, the signature of the Plaintiff is sufficient. Such notion is inconsistent with the volume of authorities bearing directly or indirectly, on the subject. In the case of Gale *vs.* Nixon, the consideration of any such question was unnecessary. The case was properly decided on the ground that, in fact, a note of the contract was signed by the party charged.

Mr. Browne, in his Treatise on the Statute of Frauds, says:

"It is not only contracts for the *sale* of land, which are intended to be embraced; for all the cases show that a *purchase* of land is as much within the statute as a sale of it, the policy of the law being not only to protect owners of land from being deprived of it without written evidence, but also to prevent a purchase of land from being forced by perjury and fraud upon one who never contracted for it," sec. 263.

In the year 1830, the provision of the New York statute, on this subject, was modified so as to require the contract, or a note or memorandum thereof, to be subscribed by the party by whom the sale is to be made— not by the party by whom the consideration is to be paid.

Alluding to this subject, in the National Fire Insurance Company *vs.* Loomis et als, Chancellor Walworth remarks, that this statute does not require the written contract or memorandum of the sale to be signed by the purchaser. 11, Paige 431—see 433–4. Commentators have mentioned

this remark, without reference to the peculiarity of the statute as to which it was made; and so have, to some extent, created the erroneous impression that the like principle applies where the statute has not been so modified. It needs, however, but a glance at the English and Virginia and West Virginia statutes, on the one hand, and the New York statute on the other, to see that they are materially different in this respect.

The wisdom of the statute of frauds and perjuries has, by experience, been vindicated most conclusively. The early relaxation of their provisions in one or more classes of cases implying fraudulent abuse of confidence, has, to many able jurists, been the subject of serious regret. Now that the law, in this and other States, authorizes parties to testify in their own behalf, there is much more cogent reason than heretofore, why the rigor of the statute should not in any case be further abated. Indeed it is supposed that this important modification of the law of evidence will occasion an enlargment of the classes of cases, in which contracts or memoranda thereof will be required to be written and signed by the parties to be bound by them.

When a party who has made and signed a contract in writing for the sale of land, sues a purchaser for specific execution, in order to enforce a sale of the land and application of the proceeds to the satisfaction of the consideration, he should allege that the defendant promised or agreed to pay the consideration. When he fails to do this, and the defendant demurs, the bill must be held bad. The plaintiff, however, need not allege that the contract or agreement to pay the consideration, was in writing and signed by the defendant. For the failure to make such allegation, on demurrer, the bill will not be held bad. But if the defendant, by answer, denies the promise or agreement, on his part, or if, by plea or answer, he admits the contract, but relies on its not having been in writing and signed by him, the plaintiff must prove that the contract was made in writing and signed

by the defendant. Or if neither the contract, nor any memorandum or note of it, was in writing signed by the defendant, but under the contract he took possession of the land and committed waste thereon, or did such act of part performance as to entitle the plaintiff to a specific execution, the plaintiff should allege the fact, either in the original bill, or, after the plea or answer, in an amendment.

To the bill of an executor to obtain specific execution of a contract for the sale of land, the heir, upon whom the legal title descended, or the devisee to whom by the will it was given, should be a party. Not only because he is primarily interested in the matter of the suit, but because unless he is a party, the title in him cannot be divested and conferred on the purchaser, it is indispensible that he should be before the court.

Nor should it, in the bill, be left in doubt, whether the title of the decedent passed to a party to the suit or not. The subject is one, generally, rather within the knowledge of the plaintiff than the defendant. It is unquestionably one which the former must ascertain and act on, in order to institute and maintain his suit. He should allege the fact with reasonable certainty.

In this case, James Capehart, describing himself as personal representative of James Capehart deceased, brought his suit in equity and filed his bill, against John P. Hale, in which he alleges that James Capehart, the father of the plaintiff, the testator whom he represents, by contract in writing dated August 1866, bound himself to sell and convey to Hale, a house and lot, described, for the sum of twenty-five hundred dollars, payable five years thereafter, with interest from the 20th of May 1865, payable annually.

The Plaintiff filed, as a part of the bill a writing in the name of Capehart alone, in the first person, signed by him, the substance of which is this: "I do hereby agree and bind myself, my heirs &c., to sell and convey

to J. P. Hale, the house and lot," described, occupied by Hale, " When he shall pay to me twenty-five hundred dollars, with legal interest thereon from the 20th of May 1865, that being the agreed price and value of the property between the said Hale and myself; but I require that he shall pay the interest on the twenty-five hundred dollars annually until the principal is paid, and I reserve the right to require the payment at the expiration of five years, or any time thereafter at my option. Signed, 'James Capehart:' dated 'August 1866.' " The Plaintiff alleges that Hale made sundry payments on the interest.

The Plaintiff alleges, that Capehart died, leaving a will, under which the Plaintiff qualified at personal representative; and he filed as parts of the bill, copies of orders of the Circuit Court, whereby it appears, that on the 20th day of February 1869, the will of James Capehart deceased, was proved, and James Capehart had leave to qualify as executor. And on the 22nd day of the same month, James Capehart, as executor of James Capehart deceased, qualified.

The Plaintiff alleges his willingness to deliver to the Defendant, a sufficient deed properly executed, upon the payment of the money due. And he asks a decree for the amount due the Plaintiff, as personal representative, against the Defendant, and that if the same be not promptly paid, the Court order the house and lot to be sold and the proceeds to be applied to the payment of the money due.

The contract was not signed by Hale. There is no allegation that he promised or agreed to pay any consideration for the land, or made or accepted any contract, verbal or written; nor is there any allegation or indication, that, under the contract, with or without the consent of Capehart or his heir or devisee, the Defendant took or retained possession of the property, or committed any waste, or did any injury that might create in the Plain-

tiff the right to have specific execution of any contract; nor any indication that the Defendant was not willing to lose the part of the interest he had paid on the contract which he did not sign, rather than pay the principal therein mentioned with the interest not paid.

Except the suggestion that Capchart was the father of the Plaintiff, there is no allegation as to who were his heirs or devisees, or to, or in whom the legal title descended or vested, and no copy of the will is filed.

The Defendant demurred to the bill, and assigned for cause, that it does not appear in what capacity the Plaintiff sued—whether as executor, administrator, administrator with the will annexed, administrator *de bonis non*, curator or committee; and for other causes not specifically stated. The Court overruled the demurrer and required the Defendant to answer the bill.

The Defendant appealed.

The Appellant has stated no point on which he relies, except that specified in the demurrer. Counsel have not argued the case, except that the Plaintiff's counsel furnished a note, without citation of authority, upon the one point indicated by the demurrer. So that the Court has been left, without further aid, to find its way to such conclusion as might seem most rational.

Though the Defendant below assigned no other cause of demurrer than the one already mentioned, the Circuit Court ought to have considered, and this Court will consider the want of equity on the face of the bill, and want of parties indispensable to the rendition of a just and complete decree.

Having carefully considered the subject for the reasons mentioned, we are of opinion, that the order overruling the demurrer and requiring the Defendant to answer, is erroneous; and, therefore, that it be reversed, and the Appellant recover against the Appellee his costs in this Court; that the cause be remanded to the Circuit Court, that the Plaintiff therein, if he wishes, may have

leave, to amend his bill, and that if he fails to do so, the bill be dismissed, and that the Defendant recover against the Plaintiff costs.

1873.
June Term.

Capehart,
Ex'or &c.
v.
Hale.

HAYMOND, President, and PAULL and MOORE, Judges, concur in the foregoing opinion.