## CHARLESTON.

STEENROD'S ADM'R *v.* W. P. & B. R. R. Co.

Submitted June 5, 1885.—Decided November 21, 1885.

1. While our statute—sec. 1 ch. 98 Code—requires every contract for the sale of land to be signed by the party to be charged, still where there has been such part performance as will take the case out of the operation of the statute, a written contract signed by the vendor alone may be by him enforced against the vendee in a court of equity. (p. 8.)

2. A bill filed for the specific execution of a written contract between the plaintiff's testator and a railroad company avers, that pursuant to said contract the company took possession and occupied the land therein mentioned as a railroad-track from prior to July 1, 1853, until it became wholly insolvent and its property was purchased by the W. P. & B. Co., another railroad company, and that it then passed out of existence; that the said W. P. & B. Co. had succeeded to its property and become responsible for its liabilities ; that in an action brought to recover the land from the latter company it produced said written contract and thereby caused said action to be dismissed, and that said W. P. & B. Co. was in possession of and using the land as a railroad-track, HELD :

*The other decisions announced at this term are reported in Vol. XXVI.

I. On demurrer by the W. P. & B Co. such bill is sufficient.

II. That the averments show such privity between said companies as entitles the plaintiff to a specific execution of the contract against the latter company and a decree for a sale of the land for the money due therefor, especially as the latter company, after relying upon said contract and causing the action at law to be dismissed, is estopped to deny such privity and its responsibility for the obligations imposed by such contract.

III. The first mentioned company having according to the averments of the bill passed out of existence, the bill is not demurrable because such company is not made a party to it,

IV. The personal representative not the heirs or devisees of the vendor is the proper plaintiff in such suit for the enforcement of the contract.  (p. 9.)

3. Where a report of commissioners appointed to ascertain the damages for land taken by a railroad company shows no error or defect upon its face and is not excepted to in the court below, it can not be objected to in the Appellate Court, because upon the whole record of the suit it appears that it is possible or even probable the commissioners may have included improper items in their ascertainment of the damages reported by them. (p. 11.)

4. An order of publication which, in the opinion of this Court, contains a sufficient statement of the objects of the suit.   (p. 12.)

5. The general rule in ordinary contracts for the sale of land, which contain no stipulation for interest and do not specify any day for completion, is that the purchaser is liable for interest on the purchase-money from the time he takes possession, especially if he has received rents and profits.  (p. 14.)

6. If in any such case the vendee seeks to escape the payment of interest on account of default of the vendor, he must actually set aside the purchase-money and appropriate it for the vendor, and notify him that the money is thus idle.  (p. 15.)

*D. Lamb* and *H. W. Russell* for appellant.

*Caldwell & Caldwell* for appellee.

SNYDER, JUDGE :

Peter W. Bosley as administrator of Daniel Steenrod, deceased, at March rules 1879, exhibited his bill in the circuit court of Ohio county against The Wheeling, Pittsburgh

and Baltimore Railroad Company and the heirs and devisees of said Steenrod, in which he alleges, in substance, that his testator departed this life in April, 1864, after having made his will which was duly probated, and he was, on May 4, 1876, appointed administrator *de bonis non* with said will annexed by the county court of said Ohio county; that on March 19, 1852, his testator, being the owner in fee of a large landed estate in said county through which the Hempfield Railroad Company proposed to construct its railroad, on that day entered into a written agreement with said company by which it was authorized to enter upon and appropriate for its track a strip of land sufficient for the purpose as far as its road might pass through said lands without any previous condemnation, and in case the parties could not thereafter agree upon the damages arising from the construction of the road through said lands, the same should be ascertained in the manner prescribed by law, and upon the payment of said damages the testator would convey the land so taken to said company upon reasonable demand, which agreement is filed with the bill as "Exhibit C."

That in pursuance of, and under said agreement the said company constructed its road through said lands on the line now used and occupied by the defendant, The Wheeling, Pittsburgh and Baltimore Railroad Company, and also through a tract then owned by testator and Samuel McCoy known as the Mills farm—all of which was done prior to July 1, 1853; that the executors of said McCoy, in a suit brought by them in March, 1876, in said court against the said Wheeling, Pittsburgh and Baltimore Railroad Company, R. S. Brown, a former administrator of said Daniel Steenrod, and others, obtained a decree ascertaining the damages for the land taken for the said road from said Mills farm to be $789.00.

That said Hempfield Railroad Company occupied and used all the land so taken from before July 1, 1853, till it passed out of existence and the defendant, the Wheeling, Pittsburgh and Baltimore Railroad Company "succeeded to its property, rights, privileges and easments and became responsible for its liabilities under the agreement, 'Exhibit C.' "; that said Steenrod while he lived was unable to agree with the Hempfield Railroad Company upon the damages for

said lands and since his death his personal representatives have been so unable to agree with either of said railroad companies; that before the death of said Steenrod the Hempfield Railroad Company became wholly insolvent and so continued until its road and property were, in 1871, purchased by the defendant, the Wheeling, Pittsburgh and Baltimore Railroad Company.

That certain devisees of the testator brought an action of ejectment against the Wheeling, Pittsburgh and Baltimore Railroad Company to recover from it the land so taken and appropriated as aforesaid, and on the calling of said action for trial, in 1873, the said company produced the agreement, "Exhibit C.," and thereby caused said action to be dismissed, and that occasion was the first information the heirs, devisees and personal representatives of said Steenrod had of the existence of said agreement; that subsequently said devisees brought a suit in equity for the specific execution of said agreement against the said Wheeling, Pittsburgh and Baltimore Railroad Company as to a portion of the lands taken as aforesaid, and during the pendency thereof he (this plaintiff) was, in January, 1877, first informed of the existence of said "Exhibit C.," and he thereupon, on his petition, was made a defendant in said suit, and thereafter, on January 9, 1880, upon the motion of the defendant, the Wheeling, Pittsburgh and Baltimore Railroad Company, said suit was finally dismissed, but without prejudice to the right of the plaintiff here to institute and prosecute the present suit.

The plaintiff then states with much particularity the nature and extent of his claim for the land taken for the use of said railroad and the damages resulting to the residue of the tract from such taking, and then prays that the defendants, the heirs at law of said Steenrod, be required to execute and file in the cause a proper deed conveying to the defendant, The W. P. & B. R. R. Co., all the land taken and appropriated under the said agreement, "Exhibit C.," and in the event they fail to do so, that such deed may be made for them by a commissioner; that the amount due him from the last named company for said land and damages may be ascertained and said company decreed to pay the same with proper interest thereon, and in default of such payment the

said land may be sold and the proceeds paid to him, and for general relief.

The following is a copy of the agreement filed with the plaintiff's bill as "Exhibit C.":

"The undersigned owners of real estate in the county of Ohio, Virginia, for and in consideration of the benefits and advantages that will result to them from the location and construction of the Hempfield Railroad, and the sum of $1.00 to them respectively in hand paid by the Hempfield Railroad Company at and before the execution hereof, the receipt whereof is hereby acknowledged, do severally agree with the said Hempfield Railroad Company that said company and its officers, agents and contractors, may enter upon the lots and land owned by the undersigned, respectively, and may appropriate thereof to the use of said company a strip of land four rods in width and such additional width as may be required and necessary for the use of said railroad at deep cuttings and embankments, one half thereof on each side of the center line of the railroad, extending in length as far as the same may pass through their respective lots or lands. The entry and appropriation hereinbefore authorized for the construction of the road on such line as is now located or which may be hereafter located, may be made without a previous condemnation of the lands and lots of the undersigned for the use of said company according to its charter and the supplements thereto or the laws of the State of Virginia. And in case the said company and any of the undersigned cannot hereafter agree upon the amount of damages arising from the construction of said railroad, the damages claimed by such disagreeing owner shall be ascertained and adjudicated in the mode prescribed by the laws of the State of Virginia in such case made and provided. And on payment of the damages so assessed, if any be awarded, the undersigned respectively agree to convey to the company the said strip of land through their lots and lands on reasonable demand. And the undersigned, in consideration aforesaid, do also respectively grant to the said company the privilege of removing and taking from land owned by them, adjacent to the said railroad, any gravel, stone or other materials which may be necessary for the construction

of the road, provided that if any gravel, stone or other materials be taken outside of the lands of the road, a just compensation shall be paid therefor, to be ascertained by three appraisers chosen as follows, viz.: one by the owner, one by the company and the third by the two so selected, and the award of said appraisers shall be final and conclusive and shall be paid by said company."

This agreement was signed, March 19, 1852, by Daniel Steenrod, Samuel McCoy and others.

The cause having been set for hearing as to all the defendants, came on to be heard June 5, 1880, upon the bill, exhibits and the papers and record of proceedings in the case of *McCoy's Executors* v. *The W. P. & B. R. Co. and others*, and thereupon the court made an order appointing in the manner prescribed by law, five freeholders to ascertain and report to the court " what will be a just compensation for the land owned solely by Daniel Steenrod, now deceased, and taken by the Hempfield Railroad Company, as stated in complainants' bill, and for the damages by reason of the construction of the road of said last named company to the tract from which said land was taken beyond the peculiar benefits derived in respect to such residue from the construction of the road, and Saturday, September 4, 1880, is designated as the day the commissioners are to meet."

In response to this order the commissioners on September 4, 1880, filed their report, in which they fully describe the land taken and used by the railroad company for its road, giving the courses and distances and ascertaining the aggregate quantity thus taken to be 11 52-100 acres of the value of $1,440.00, as of July 1, 1853, when it was taken, and fixing the damages as to the residue of the tract as of the same date at $500.00, making the aggregate damages $1,940.00 as of July 1, 1853. They also report the value of said land at $1,958.40, on May 4, 1871, when it was taken possession of by the W. P. & B. R. R. Co. and the damages to the residue of the tract at $500.00, the same as they were in July, 1853, thus making the aggregate damages, as of May 4, 1871, $2,458.40.

On December 10, 1883, the defendant, the W. P. & B. R. R. Co. filed its demurrer to the plaintiff's bill which was

overruled by the court and a rule given said defendant to answer on or before the 22d instant. The demurrer filed, which is in writing, is a general demurrer, but the order of the court states that the cause assigned for said demurrer was that the suit should have been brought by the heirs at law of Daniel Steenrod and not by his administrator.

On January 9, 1884, the said company having failed to answer, the cause was heard on the bill taken for confessed as to it and a decree was entered confirming the report of said commissioners without exception thereto, and ordering, "that unless the said Wheeling, Pittsburgh and Baltimore Railroad Company shall, within sixty days, after the end of the term, pay to the complainant the sum of $1,940.00, with interest thereon from July 1, 1853, until payment and 3880-4669 of his costs," &c., the said 11 52-100 acres of land shall be sold by a commissioner appointed for the purpose, or so much thereof as may be necessary to pay said debt, interest and costs. The decree further provides that unless said company shall also, within sixty days, "pay the complainant the further sum of $394.50, the one half of the amount named in the report of the commissioners in the case of Samuel McCoy's executors against said company and others, with interest thereon from July 1, 1853, until payment, and 789-4669 of the costs" of the complainant, the land described in the report of the commissioners in said suit of McCoy's Executors against said company and others, taken by the Hempfield Railroad Company from the Mills farm, lying north of the centre of said railroad, or so much thereof as may be necessary, shall be sold, by a commissioner appointed therein, to pay said last named sum, interest and costs; and said commissioner is ordered to report his proceedings to the court. The decree further provides that, upon the payment of the aforesaid sums, interest and costs, the commissioner named therein shall convey to the defendant, The Wheeling, Pittsburgh and Baltimore Railroad Company, by proper deed, with special warranty, the said 11 52-100 acres of land, and also the land before described as taken from the Mills farm, which deed shall be delivered to said company.

From this decree the Wheeling, Pittsburg ane Baltimore

Railroad Company obtained an appeal to this Court which was, on November 22, 1884, dismissed as having been improvidently awarded. 25 W. Va. 133.

Subsequently, the Wheeling, Pittsburgh and Baltimore Railroad Company, upon written notice to the plaintiff, moved the circuit court to reverse and set aside said decree of January 9, 1884, under the provisions of sec. 5 of ch. 134 of the Code, which motion the court, by its decree of January 30, 1885, overruled, and thereupon said company obtained from this Court an appeal and *supersedeas* to the said decrees of January 9, 1884, and January 30, 1885.

The appellant assigns as error and insists, that its demurrer to the plaintiff's bill should have been sustained. This assignment is based upon several specific grounds, which will be noted in their order.

1. It is contended that, as this is a suit for the specific execution of a contract for the sale of land, it can not be maintained because the contract relied upon by the plaintiff was not signed by the vendee, and *Jacobs* v. *Railroad Co.*, 8 Cush. 223, is cited in support of this position.

It is undoubtedly true that where the written contract alone is relied on in a suit for specific execution, the suit can not be maintained and may be dismissed on demurrer, unless the contract is signed by the party to be charged thereby, or his agent. This is the positive requirement of the statute of frauds. Sec. 1, ch. 98 of Code; Brown on Stat. Frauds, sec. 263 ; Fry on Spec. Perf., sec. 332.

But this doctrine has no application to cases which are taken out of the operation of the statute by part performance of the contract. In such cases verbal contracts, or written contracts signed by the plaintiff, and not by the defendant or party to be charged, have been repeatedly enforced by courts of equity in this State. *Lowry* v. *Buffington*, 6 W. Va. 249; *Baldenburg* v. *Walden*, 14 W. Va. 397; *Campbell* v. *Fetterman*, 20 W. Va. 398.

In *Capehart* v. *Hale*, 6 W. Va. 547, this Court decided that, "When under a contract not signed by the purchaser, he has taken possession, a court of equity, at the instance of the vendor, will decree specific execution."

In order to make the acts of part performance such as will

authorize a court of equity to enforce the agreement it is essential that they should clearly appear to have been done solely with a view to the agreement being performed. If they are acts which might have been done with other views, they will not take the case out of the statute. Thus, if the vendee enter into possession, not under the contract, but in violation of it, as a trespasser or under a right derived otherwise than by the contract, the case is not taken out of the statute. 1 Story's Eq. Jur. §§ 762, 763. Of this character was the case of *Jacobs* v. *Railroad Company, supra.*

2. It is next claimed that the averments of the bill fail to show that the appellant took possession of or holds the land under the contract alleged in the bill. The averments are that the Hempfield Railroad Company in pursuance of said agreement constructed its road on the lands now used and occupied by the appellant; that said company occupied and used all said land from prior to July 1, 1853 until it passed out of existence; that said company became wholly insolvent and so continued until its road and property was, in 1871, purchased by the appellant, and it, the appellant, succeeded to its property, rights and easments and became responsible for its liabilities under said agreement.

These averments are admitted to be true by the demurrer, and they, it seems to me, are plainly sufficient to establish not only that the Hempfield Railroad Company took possession of and occupied the lands under its agreement with the plaintiff's testator in such manner as to take the case out of the operation of the statute of frauds, but that the appellant purchased the lands from said company, and that its possession is in privity with it and held likewise under said agreement. This conclusion is fortified by the further allegation of the bill, that the appellant, to defeat the action of ejecment brought to recover the land now in question, produced said agreement and thereby caused said action to be dismissed. After the appellant thus availed itself of the agreement to defeat said action, it can not in equity and good conscience be permitted to deny that it is holding under said agreement or its connection therewith.

3. It is further insisted that the Hempfield Railroad

Company should have been made a party. This according to the facts averred in the bill was impossible. The averments are that before the death of Steenrod said company became wholly insolvent and so continued until its road and property was, in 1871, purchased by the appellant, and that it "passed out of existence" and the appellant succeeded to its rights and responsibilities. These averments show not only the uselessness but the impossibility of making said company a party. How could a corporation which had no property and had passed out of existence be made a party? To require such a thing would be vain and absurd. The appellant stands in the place of said company and the making of it a party was all that was necessary or could reasonably be required.

4. It is further claimed that the devisees of Steenrod, and not his administrator, are the parties entitled to sue for and recover compensation for the lands taken for the railroad. This would be true if the agreement made by Steenrod to sell and convey the lands had not been executed by him. But this being a suit for the specific execution of that agreement the rights of the parties are very different. This agreement was an equitable conversion of the property. By this is meant an implied or equitable change of property from real to personal or *vice versa*, so that each is considered transferable or transmissable and descendible, according to its new character as it arises out of the contract and intention of the parties. Thus where a contract is made for the sale of land, as is the case here, the vendor is, in equity immediately deemed a trustee for the vendee of the land; and the vendee is deemed a trustee for the vendor of the purchase-money. In such case the money is treated as the personal estate of the vendor, and it is tranferable and descendible as his personal estate and is distributable as his other personalty on his death.—2 Story's Eq. Jur. § 1212.

It is plain, therefore, that under said agreement by which Steenrod sold said lands to the railroad company, he, in equity, became the owner of the purchase-money which on his death passed to his personal representative who alone can sue for and recover the same. But this question, according to the averments of the bill, became *res judicata* when the suit

brought by the devisees to recover for the taking of said lands was dismissed in the circuit court.

I have thus considered all the objections made to the bill, and finding no error therein, it necessarily follows that the demurrer was properly overruled.

It is assigned as error in the petition for the appeal, that the court should have entertained so stale a claim as that set forth in the bill. This ground of error was not argued before this Court, and was as I think properly abandoned by the counsel for the appellant as it is obviously untenable.

It is contended by appellant that the circuit court erred in decreeing against it for that portion of the damages which arose from the taking of, and building upon, land originally taken and afterwards abandoned by the Hempfield Railroad Company and which never came into the possession of the appellant. This contention is sought to be maintained upon the ground, that because the plaintiff's bill avers, the Hempfield Railroad Company at one time attempted to construct its road upon land which was afterwards abandoned and claims damages for the injury done to that land, and the order of the court directed the commissioners to enquire what would be a just compensation for the land taken by said company "as stated in the plaintiff's bill, and for the damages by reason of the construction of the road by said company to the tract from which said land was taken," therefore, the report of the commissioners which ascertained the whole damages by reason of the construction of the road to be $500.00, must necessarily have included in said sum the damages done to the land so taken and abandoned by said company. While it is possible and perhaps probable that the commissioners may have included, as a part of said $500.00, the damage done to the land so abandoned, there is nothing on the face of the report to show they did so. The report was not excepted to upon any ground, nor was it objected to in the court below. It is too late, therefore to make any such objection to the report in this Court.—Warth's Code, §§ 17, 19, ch. 42, p. 288.

The next assignment of error relates to that portion of the decree relating to the Mills farm. The bill, papers and proceedings in the suit of McCoy's executors against the appel-

lant and others are referred to and made a part of the plaintiff's bill in this cause, but the appellant has failed to have the transcript of the record of that cause copied or brought before us on this appeal. His counsel insists that that was unnecessary, because, as he says, "the plaintiff's bill contained all that we deemed it necessary to have of the suit by McCoy's executors." The bill avers that both the appellant and the administrator of Steenrod were parties to said suit, and that a decree was obtained in that cause ascertaining the damages for the land taken from the said Mills farm, which was owned jointly by McCoy and Steenrod, for said road to be $789.00. There is nothing in the bill, as claimed by counsel for appellant, to show that this McCoy suit was still pending when the present suit was brought. If that was a material matter it was for the appellant to plead and establish that fact. But I do not think it at all material whether that suit was pending or not. The heirs or devisees of Steenrod were not parties. It was, therefore, proper that a new bill should be filed to bring the said heirs and devisees before the court in order that a deed could be made for the land when the purchase-money should be paid according to the agreement between the parties. This might have been done by an amended bill, but it might also be done by a new suit, especially as such was essential in this case to enforce the agreement as to the individual land of Steenrod not embraced in the McCoy suit.

It is objected, however, that as to the non-resident heirs of Steenrod the order of publication was insufficient to notify them that the object of the suit embraced the Mills farm; that the prayer of the bill does not extend to this farm, and that the personal representatives of McCoy are not made parties to this suit.

The decree of June 5, 1880, states that the cause came on to be heard, among other things, upon the order of pulication against the non-resident defendants "duly executed." This according to the settled law is conclusive as to the *due* publication of the order, so far as the Appellate Court is concerned. *Hunter* v. *Spotswood*, 1 Wash. 145; *Gibson* v. *White*, 3 Munf. 94; *Moore* v. *Holt*, 10 Gratt. 284. But if it be claimed that these decisions relate merely to the *evidence* of

the due publication of the order and not to the sufficiency of the order itself, still the point is not well taken ; for the order states, that the object of the suit is to have the amount due the plaintiff from the appellant "for land of Daniel Steenrod, taken and appropriated by the Hempfield Railroad Company for its use, under an agreement dated March 19, 1852, a copy of which is filed with the bill," and "to obtain a decree requiring the heirs at law of said Steenrod to file in this cause a good and sufficient deed * * * granting to the Wheeling, Pittsburgh and Baltimore Railroad Company *all of the land* taken and appropriated as aforesaid," or if they fail to do so to have a commissioner execute such deed.    This it seems to me is as full and formal as the law intended an order of publication should be.    If we look to the exhibit referred to, we will find that it does not confine its operation to the lands owned solely by Steenrod, but is sufficiently comprehensive to embrace all the lands of any one signing, whether owned solely or jointly with others.    It is apparent that such was the intent and purpose of the agreement.    It is signed by both Steenrod and McCoy, and as its terms are broad enough to include all the lands taken from either, whether owned jointly or severally, considering its object we may reasonably conclude such was the intention of the parties. I, therefore, think the order of publication was sufficient.

The prayer of the bill uses almost the same language employed in the order of publication and it is in my opinion, for the reasons just given, sufficient to embrace the land taken from the Mills farm.

I can discover no necessity or even propriety for making the representatives of McCoy parties to the bill in this cause. The bill shows that the Mills farm was owned jointly by Steenrod and McCoy ; that it was undivided at the time the agreement was made and that the damages to the whole farm was $789.00.    There could then be no controversy about the portion of said sum which belonged to Steenrod. He was unquestionably entitled to the one half and McCoy's representatives to the other half.    Both said representatives and the appellant were parties to the McCoy suit in which the damages to the Mills farm was fixed, and they are therefore bound by the decree in that suit.    The court properly

under all the facts, decreed to the plaintiff the one half of said damages.

The last assignment of error is that the court improperly decreed that the defendant should pay interest for the value of the land taken and damages from July 1, 1853, or from any other time. It is insisted that if the decree was not erroneous in giving interest for any period, it was at least erroneous in giving interest since the death of Steenrod, because at no time since then was there any person who could receive the money and make a deed for the land.

The counsel has misapprehended the decree. It does not decree that the defendant shall pay either the damages or interest thereon. It is not as supposed a personal decree. It is simply a decree for the specific execution of the agreement of March 19, 1852, and for the sale of the land unless the appellant may elect to pay said damages and interest. It imposes no personal obligation upon the appellant. If it does not claim or want the land, or if it is advised the land is not worth the amount decreed to plaintiff, it has the option to let the land go to sale and refuse to buy it, or buy it at the least price possible.

The plaintiff's bill avers that the Hempfield Railroad Company took possession of the land under the agreement of purchase prior to July 1, 1853, and that it and the appellant have used and occupied the same ever since. Referring to the agreement we find that it provides, that on the payment of the damages the vendor agrees to convey the land on reasonable demand. The covenants to pay and convey the land according to the stipulations of this agreement are not strictly dependent. The contract is that the payment is to precede the conveyance and the latter is to be made only upon reasonable demand after the payment. But even if these covenants were dependent, the vendee would be decreed to pay interest; for, the general rule is, in ordinary contracts which contain no stipulation for interest and do not specify any day for completion, that the purchaser is liable for interest on the purchase-money from the time when he takes possession, especially if he has received rents and profits. Pomeroy on Contr., sec. 430; *Powell* v. *Martyr*, 8 Ves. 148–9 ; *Fludyer* v. *Cocker*, 12 *Id.* 25.

This general rule as well as its application to the facts in this cause is not very seriously questioned by the counsel for appellant, but they very earnestly insist that the appellant should not be compelled to pay interest between the time of the death of Steenrod and the date of the final decree. This contention is grounded on the assertion that the covenants to pay and convey are mutual and dependent, and that since the death of Steenrod there has been no person who was at the same time entitled to receive the money and make the deed for the land. If the construction of the agreement and the facts were as assumed by the appellant, it would still be liable for interest; because the rule is, that if the vendee would escape the payment of interest on the purchase-money, even when the delay in the payment is caused by the default of the vendor, he must actually set aside the money and appropriate it for the vendor, he must not in any way derive a benefit from it, and must notify the vendor of these facts and that the money is thus lying idle.—*Cracraft* v. *Roebuck*, 1 Ves. 221; *Roberts* v. *Massay*, 13 *Id.* 561; *Kershaw* v. *Kershaw*, L. R. 9 Eq. 56; *Winter* v. *Blades*, 2 S. & S. 393.

There is no pretence that the money had been set apart for the vendor by the Hempfield Railroad Company or its successor, the appellant. These companies enjoyed, during the whole period from prior to July 1, 1853, to the date of the decree not only the rents and profits of the land, but they had the use and benefit of the purchase-money also; consequently it is both just and equitable that the vendor, who was all this time deprived of his land and its use, should receive interest.—*Drake* v. *Barton*, 18 Minn. 462; Pomeroy on Contr. § 429.

For the reasons thus given, I am of opinion that there is no error in the decree of the circuit court and the same should be affirmed.

AFFIRMED.