## REID *v.* DUNCAN.

The law creates an obligation to pay interest, only where the debtor is put in default for the payment of the principal; and in such a case it runs only from the date of the default.

An agreement to pay a higher rate of interest than the law allows, being in contravention of a prohibitory law, is void. C. C. 12. So an agreement to pay the highest rate of conventional interest upon a sum composed of the principal loaned and usurious interest, is usurious. In such cases, the whole agreement as to interest is void, and none whatever can be allowed.

Where by agreement between the maker and holder of a note, executed for the principal of a loan and for a certain amount of usurious interest added thereto, it was stipulated that the proceeds of property shipped to the latter should be applied to the payment of the note, the payment must be imputed *pro rata* to the principal and interest; and where the contract relative to the payment of interest is subsequently annulled as usurious, the creditor will be entitled to retain the amount imputed to the payment of the interest. Money paid in discharge of usurious interest cannot be reclaimed.

APPEAL from the District Court of Caddo, *Campbell*, J. *Roysdon*, for the appellant, cited 3 Mart. N. S. 196. 3 La. 393. 6 La. 708–9. 4 Robinson, 493. 1 Yerger, 243, 444. 7 Ib. 545. 6 Wendell, 415. 2 Maule & Selwyn, 632. Chitty on Bills, 9 Am. ed. pp. 109–10, and *note* 1; p, 111, *note* 3.

*Crain*, for the defendant.

The judgment of the court was pronounced by

SLIDELL, J. On the 8th June, 1840, *Taylor & Ferguson*, on the recommendation of *Taylor* to his partner, loaned to *Reid* the sum of $4,800, and took from him his note for the sum of $6,000, payable at New Orleans on the 1st June, 1841, to the order of *Taylor & Ferguson*, thus charging *Reid* for the use of $4,800, for a period a little less than a year, $1,200, being over twenty-four per cent per annum. It also is shown that the $4,800 was given to *Reid* in Illinois bank notes, which were then at about five per cent below specie value. With regard to this portion of the usurious transaction the plaintiff has not asked relief.

The note was protested at maturity on the 4th June, 1841, having been previously endorsed by *Taylor & Ferguson* to *Taylor & Duncan*, a firm of which *Taylor*, of *Taylor & Ferguson*, was a partner, and who had knowledge of the

34

usurious consideration.  *Reid*, some months after, applied to *Taylor & Duncan* for time, promising that he would send them his crop of that year to be appropriated to the note, and also give a mortgage.  Accordingly, on the 26th February, 1842, the parties executed, at New Orleans, a notarial act, in which, after reciting that *Taylor & Duncan* are holders of the $6,000 note, and that the same was protested at maturity, they say, " that *Taylor & Duncan* have agreed to extend the time of payment of said note for the term of twelve months from and after the date of the act, on being paid interest at the rate of ten per cent per annum on the said sum of $6,000, from this day until final payment.  Now, therefore, to secure the full and punctual payment of the said note, and interest, at the period aforesaid, the said *A. G. Reid* declared that he does, by these presents, specially mortgage and hypothecate unto the said *Taylor & Duncan*, the said *Taylor* being present and accepting in their behalf, the following described lands, slaves, &c., to wit."  The mortgaged property is then described, and the act proceeds as follows :  " The said *A. G. Reid* promises not to alienate, &c., and moreover binds himself, his heirs and assigns, to pay the above discribed note, with the interest thereon *as herein before stipulated*, at the expiration of the said term of twelve months, it being well understood and agreed to, by and between the said parties, that the extension of credit shall not operate, or be considered, as a novation of the original debt."  It will be observed that the debt thus remained unchanged ; and also that the mortgage, and the promise as to interest, refer only to conventional interest that shall accrue after the date of the act.

When the time thus given expired, *Reid* failed to pay, and *Duncan*, as surviving partner of *Taylor & Duncan*, and as the executor of his deceased partner, obtained an order of seizure and sale, asking, in his petition, that he be.paid from the proceeds of sale, the sum of $6,000, with interest from the 26th February, 1842, at the rate of ten per cent per annum.  The present suit was brought by *Reid*, to enjoin the execution of the writ of seizure and sale.  He alleges the usurious contract by which he had obligated himself to pay $1,200 for the use of the $4,800 as above stated ; he also alleges that he has paid on the note $1060 18 in cotton, and prays relief accordingly.  The defendant answers by a general denial, and also pleads that the proceeds of the cotton should be applied to certain advances made thereon to the defendant.  The court below decreed as follows :  " That the injunction be sustained for the sum of $1,200, claimed as usury, to be credited on the note at its date ; and for the further sum of $1060, to be credited on the said note, on the 21st April, 1842 ; and that the sheriff proceed with the sale to make the balance of the said debt, viz : the sum of $4,800, with interest at five per cent per annum, from June 24, 1841. to 26th Feb. 1842, and interest on the said sum from the last date, at ten per cent per annum, until paid, credit by said sum of $1060, 21st April, 1842, with such costs as were taxed in the order of seizure and sale."  The court rejected the defendant's claim for advances, without prejudice, however, to the rights of suit therefor.  From this judgment *Reid* has appealed ; and the appellee, in his answer, also asks that the judgment be amended in his favor.

Our first inquiry is, did the court below err in declaring void so much of the note, to wit, $1,200, as was given for usurious interest from its date to maturity ?  There are two classes of interest known to our law, conventional and legal interest.  Civil Code, art. 1930.  The former flows from the convention of the parties ; the latter is given by the law under certain circumstances, in-

dependent of the convention of the parties. In contracts stipulating conventional interest, it is due, without any demand, from the time stipulated for its commencement, until the principal is paid. Civil Code, art. 1931. In contracts which do not stipulate for the payment of interest, it is due from the time the debtor is put in default for the payment of the principal, and is to be calculated on whatever sum shall be found by the judgment to have been due at the time of the default. Civil Code, art. 1932. Thus it clearly appears, that the only case in which the law creates an obligation to pay interest is, when the debtor is put in default for the payment of the principal; and when he is so put in default, the interest, the right to which is created by the operation of law, runs only from the date of the default.

Turning then to the consideration of conventional interest, that is, the obligation to pay interest which arises from this convention of the parties, we find that the law, from grave considerations of public policy, has laid down certain rules to regulate and restrain these agreements. The amount of conventional interest cannot exceed ten per cent. The same must be fixed in writing, and testimonial proof of it is not admitted in any case. Civil Code, art. 2895. The statute is prohibitory. Whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed. Civil Code, art. 12. The agreement then to pay this $1,200 of interest, being a violation of a prohibitory law is void, and as such we can give it no effect whatever. We cannot say that we will let the convention stand up to the highest limit permitted by the law, and disregard it for so much as it exceeds the legal limit. The convention is a whole, and tho nullity covers the whole.

Again: The contract for conventional interest derives its existence, not from the law, but from the agreement, and must be fixed in writing. Civil Code, art. 2895. The parties here made no convention for any lower rate; if we substitute a lower rate, we create a convention for the parties. But the law gives us no such authority. The only case in which the law creates an obligation to pay interest being, when the debtor is put in default for the payment of the principal, and then only from the date of the default. The convention then of the parties to pay the twenty-four per cent interest, from the date of the loan till the time when it was exigible, being void, and the law having made no provision for legal interest anterior to default, the sum of $1,200 stipulated by the parties is a sum for which no legal liability ever existed, and the payment of no part of which can be enforced.

Nor does the fact that *Reid*, after the maturity of this note, in the notarial act of mortgage, recognized the existence of the note and indebtedness for $6,000, stipulated for an extension of time, and gave a mortgage, affect his right to be relieved from the contract to pay usurious interest. The note was not novated by this agreement; the notarial act expressly declared that it was not novated. It was merely recognized as an existing contract and indebtedness, which the debtor secured by a mortgage, and upon which he promised to pay ten per cent interest from the date of the notarial act. The cases wherein payments were made, and the debtor was held to be thus estopped from getting back the usurious interest, or being relieved with regard to it, have no analogy to the present case. Here the original promise to pay the usurious interest still stood unchanged, and retained its original form and force. This case is a much stronger one against the creditor, than the case of *Rosenda* v. *Zabriskie*, (4 Robinson, 493,) where the original notes had been several times renewed.

REID<br>v.<br>DUNCAN.

But it is contended by the creditor that, he has a right to have imputed to this sum of $1,200 of interest, the proceeds, to wit, $1060 18, of certain cotton shipped by *Reid* to *Taylor & Duncan*, and which appears to have been sold on the 14th March, 1842; while, on the other hand, the plaintiff asks that, it be imputed to the $4,800. If this imputation can be made it is clear that, under the jurisprudence of the Supreme Court as established in several cases, and which we regard as now well settled, the debtor, *Reid*, cannot get back what has thus been paid. It is shown by the evidence that, it was agreed by the parties that *Reid* should ship his crop to *Taylor & Duncan*, " to be appropriated to their note." As the note was for a total sum of $6,000, and as the promise and understanding were that it should be appropriated to the whole note, and not upon any particular portion of it, we deem it equitable not to apply the payment to any particular portion or component part of the sum of $6,000, to the exclusion of the other, but *pro rata* to each to the $4,800 and the $1,200. This gives a credit upon the principal of $848 14.

We come now to the consideration of so much of the judgment of the court below, as allows interest at the rate of ten per cent per annum upon the debt, from 26th February, 1842. This interest of ten per cent is stipulated in the mortgage upon the whole note, $6,000; as a part of this note was usurious interest, it obviously follows that this new stipulation was usurious. The rate of ten per cent is a lawful rate; but here it is the sum upon which it is stipulated, which makes it unlawful; $1,200 of the note being made up of usurious interest, it was in reality a stipulation compounding usurious interest. This case is not distinguishable from the case of *Flood* v. *Shamburgh*, 3 Mart. N. S. 634. There a note for $10,000, payable in one year, was given for a loan of $8,800. By a subsequent act of mortgage passed to secure the payment of this note, the borrower had stipulated to pay interest at ten per cent, if it was not regularly discharged at the end of the year. The judge below was of opinion that ten per cent interest could be recovered on the sum really lent, from the date of the failure to comply with the original contract. The Supreme court reversed the decision.

But it is said that the party is, at least, entitled to maintain his order of seizure and sale, for the lawful rate of interest, from the date of the maturity and protest of the note, upon the amount of the principal debt. There is strong reason to infer from the evidence in the record, and especially from *Duncan's* own pleadings, that this interest, up to the date of the mortgage, had been paid or released. Be this as it may, it suffices to say that, this proceeding is by order of seizure and sale to sell the mortgaged property, and is based solely upon the notarial act. That act, by which alone the real estate seized was made liable, is entirely silent as to the legal interest which accrued by protest of the note. Not a word is said in the act of mortgage of any interest but the conventional interest, which it stipulates from the date of the notarial act itself; and such was the interpretation which the creditor has himself put upon the mortgage, for in his petition for an order of seizure and sale, he asks to be paid, out of the proceeds of the sale, the sum of $6,000, with interest thereon at the rate of ten per cent, from the 26th day of February, 1842, until final payment.

As to the claim of the defendant to have the proceeds of the sale of the cotton appropriated to his account, for sundry items alleged to have been advanced on the consignment, we concur with the district judge, in considering it as established by the evidence that, the agreement of the parties was that those proceeds

should be credited on the note; and, under this agreement, evidence was admissable to prove the proceeds of sale of the cotton shipped.

It is therefore decreed, that the judgment of the court below be reversed; and it is further decreed that, the sheriff proceed with the sale of the mortgaged property, to make the sum of $3,951 86, with costs of said seizure and sale; and it is further decreed that, the said defendant pay the costs of this suit. This decree not to prejudice the rights of said defendant, as to the account for supplies and advances in his answer pleaded, and a copy whereof is on file in this cause. And it is further decreed that, for the residue of the amount mentioned and directed to be collected in said order of seizure and sale, the injunction be perpetuated.