Martin vs. Muncy & Marcy.

## No. 10,059.

### ALPHONSE MARTIN vs. MUNCY & MARCY.

The right of action of an accommodation acceptor of a draft, and who pays or retires the same with his own means against the drawer, is for reimbursement, and it rests on the implied or conventional promise of the drawer to indemnify him.

By such a transaction the drafts have no longer any value as such, and the drawer is entirely discharged of all obligations thereon, his liability being to the acceptor for indemnity, and the draft being an item of evidence.

The fact that a member of a commercial firm in whose name negotiable paper has been issued by the managing partner, is ignorant of the transaction, and that no entry of the same has been made in the partnership books, will not release him from liability if it is in proof that the transaction had been made for and had enured to the benefit of the firm.

The acceptor who has paid such draft can recover only legal interest on the promise of indemnity.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*Chas. S. Rice* for Plaintiff and Appellee.

*T. Gilmore & Sons* for Marcy, Defendant and Appellant.

The opinion of the Court was delivered by

POCHÉ, J. This controversy arises out of the following facts:

Defendants were commercial partners as lumber dealers in New Orleans from August, 1878, to April 17, 1885.

In March, 1884, plaintiff, as an accommodation, endorsed a note of $6000. executed by Muncy in the name of the partnership. After several renewals of the note the debt was placed in a different shape, and by consent of all parties it was represented by four drafts of $1500 each, payable at three, six, nine and twelve months, with interest of 8 per cent per annum from date, March 14, 1884, signed in the name of Muncy and Marcy, to their order, and accepted by plaintiff.

Alleging that at the maturity of the three and six months' drafts he paid and retired them, plaintiff brings this suit to recover of the partners of the firm now in liquidation, and *in solido*, the aggregate amount which he alleges to have paid for them as accommodation acceptor, with 8 per cent interest per annum from March 14, 1885, until paid.

Muncy made no defense; Marcy pleaded a general denial, coupled with the special averment that he knew nothing of the existence of the drafts in question. He alone appeals from a judgment against both defendants *in solido*, with interests as prayed for.

Under a proper application of the universal rules which govern the

rights and obligations of commercial partners, on proof of payment of the two drafts in question, plaintiff's right to recover of defendants the amount thus paid, as their accommodation acceptor, can hardly be questioned. Edwards on Bills, on Notes, etc., section 522.

But the pith of Marcy's defense is that the original loan of $6000, which was the consideration of the note endorsed by plaintiff, was not a transaction, or for the benefit, of the partnership, but that the amount thus borrowed was used by Muncy in his own private affairs, entirely disconnected with the firm of Muncy & Marcy. Hence he contends that the two drafts accepted by plaintiff and representing in part the original loan, were tainted with the same nullity as an alleged debt of the firm, which characterized the original note of $6000.

In support of that contention appellant relies on evidence which shows that he was entirely ignorant of the whole transaction; that the books contained no entry of the same, and that Muncy had had during the existence of the partnership many business transactions on his own individual account with plaintiff, who was, during all that time, in the same line of business as the firm These facts are undeniably shown by the record.

But, on the other hand, the evidence shows that Muncy was the managing partner of the defendant firm, whose business was under his exclusive control; that Marcy paid little or no attention to the partnership operations or books, and that the business was conducted in a very loose and irregular manner, in consequence of which many of the most important transactions conducted by the managing parner, either on the streets or at the lumber exchange, were never reported to the book-keeper, and of course never entered on the books of the concern.

As an illustration, it appears from the record that Marcy's father, a man of wealth, who had assisted the firm, and had had large and important transactions with it, appeared on the books as its debtor for $80, when in truth he was their creditor for $20,000, as judicially demonstrated in suit by him against the firm at the time of its dissolution.

While the record does show that Muncy had had numerous transactions on his individual account with plaintiff, the evidence is conclusive of the fact that the sum of $6000 realized on the note of March 13, 1884, endorsed by plaintiff, was actually used by Muncy, the managing partner, for the use and in the business of the firm. Under its

effect plaintiff has discharged the burden of proof which was on him to show that the transaction had been made truly in the name and for the benefit of the firm. Mechanics and Traders' Insurance Company vs. Richardson & Cary, 33 Ann. 1308; Mutual National Bank vs. Richardson & Cary, 33 Ann. 1312.

Appellant's next contention is that the evidence is insufficient to prove the payment of the two drafts by plaintiff as acceptor, possession of the same being of itself insufficient to prove such payment. The possession of the drafts is undoubtedly an important link in the chain of evidence to that effect. Edwards, bills and notes, section 522.

And in this case that evidence is supplemented by the testimony of plaintiff and of the holder of the drafts. The latter testifies that the payment was effected partly in money and partly by securities transferred to him by the acceptor. This is a sufficient and legal payment; by it the drawers were fully discharged of all obligations resulting from the drafts, and through it they have become liable on their promise to plaintiff to reimburse him for such payment.

Appellant then makes the point that parol testimony is incompetent to prove the promise to pay the debt of another, in support of which he invokes the provisions of Act No. 208 of 1858, now article 2278 of the Civil Code.

But the prohibition therein contained has no possible application to the facts of this case. The promise of plaintiff to pay the debt of defendants was evidenced by the drafts, and therefore in writing; the promise to reimburse him was not a promise to pay the debt of another; the obligation was to pay their own debt.

Appellant's last contention is that plaintiff is not entitled to interest of 8 per cent per annum, as allowed in the judgment. That point is partially good.

The drafts were stipulated to bear 8 per cent per annum interest from date until paid.

That interest was paid by plaintiff, and defendants owe it to him. But the interest on the amount paid by him, from the date of payment until final settlement, was not determined by contract, hence it cannot be conventional, but only legal interest. The obligation of the drawers to reimburse their accommodation acceptor, is not shown to have been accompanied by any stipulation to pay any rate of interest, hence none but legal interest can be claimed.

Our conclusion is therefore that plaintiff is entitled to recover the full amount of the drafts, including 8 per cent per annum interest

thereon, which had accrued at the time that he took them up, with legal interest thereon from the date of payment until final payment by defendants, and the judgment must in consequence be amended on the score of interests.

From the drafts it appears that interests had accrued on one of them to the sum of thirty dollars, and on the other to sixty dollars, the first having been taken up on June 17, and the other on September 14, 1885.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended by reducing the rate of interest allowed to plaintiff from 8 to 5 per cent per annum, said interest to run on the sum of $1530 from June 17, 1885, and on the sum of $1560 from September 14, 1885, until final payment, and that, as thus amended, said judgment be affirmed, costs of appeal to be taxed to plaintiff and appellee.