No. 9017
Orleans

INTERSTATE ELECTRIC CO. v. LEO NEUGAS, Appellant

(October 5, 1925, Opinion and Decree)
(October 19, 1925, Rehearing Refused)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Mandate—Par. 40, 42.**
The principal must reimburse the just and necessary sums which the agent has expended in the execution of his mandate and pay him reasonable compensation for his services.

2. **Louisiana Digest—Mandate—Par. 42.**
The principal cannot reduce the amount of his reimbursement under pretense that the expenses might have been less, when they were made by the agent in good faith.

3. **Louisiana Digest—Mandate—Par. 42; Interest—Par. 18.**
The principal owes five per cent interest on all advances made by his agent for his account from the day upon which the advance is made.

4. **Louisiana Digest—Interest—Par. 20.**
An obligation to pay conventional interest must be evidenced by writing.

5. **Louisiana Digest—Interest—Par. 19, 21.**
A notation printed by the creditor upon a bill sent by him to his debtor in these words: "Interest charged at the rate of eight per cent per annum after thirty days from date of invoice" will not create on the part of the debtor an obligation to pay that rate of interest.

6. **Louisiana Digest—Costs and Fees—Par. 53.**
Where the appellant has failed to apply for a new trial in the District Court to correct a clear error in the judgment, he will be condemned to pay the costs of appeal.

Appeal from Civil District Court, Division "B". Hon. Percy Saint, Judge.

This is a suit by an agent against principal for reimbursement of money advanced for his account.

There was judgment for plaintiff and defendant appealed.

Judgment amended and affirmed.

Lemle & Lemle, of New Orleans, attorneys for plaintiff, appellee.

Hall, Monroe & Lemann, of New Orleans, attorneys for defendant, appellant.

CLAIBORNE, J. This is a suit by an agent against his principal for reimbursement of money advanced for his account.

The plaintiff alleges that in November, 1918, the commercial partnership of Meyer & Neugas, composed of N. Meyer and Leo Neugas, doing business in Magnolia, Mississippi, sent to plaintiff in New Orleans one 50 H.P.A.C. controller to be rewound, reinsulated and repaired; that plaintiff was not in that line of business as was well known to the defendants; that plaintiff notified them of that fact. Whereupon defendants instructed plaintiff to have the repairs made; that plaintiff called upon a number of mechanics in an endeavor to have the repairs made, but every one was crowded with work, and finally plaintiff delivered the controller to Emanuel Hart, doing business under the name of the Enterprise Electrical Company, who undertook the work on a time basis of $2.00 per hour for each man for each day's work, and double that amount for overtime and night work, eight hours to constitute a day's work; plaintiff communicated this charge to the defendants, who instructed him to have the work done by day and night work; that accordingly plaintiff ordered the Enterprise Electrical Company to proceed with the work, and on completion thereof paid the bill to the Enterprise Electrical Company for $302.84, and billed defendants for the amount thereof, plus ten per cent for plaintiff's disbursements and services in the matter,

which is the customary charge for like services, which the defendant refused to pay.

The defendants admitted that they had shipped to the plaintiff a controller to be repaired, and instructed him to have the repairs made. As to the instruction to have the said work done, by day and night work, as the loss of this controller was costing the partnership $50.00 per day, defendants alleged that they had "no information sufficient to justify a belief as to the remaining allegations of this article and therefore deny the same". Further answering, defendants alleged "that the said controller, after being shipped back to said firm at Magnolia, Mississippi, failed to give satisfactory service, which necessitated the said Enterprise Electrical Company twice sending one of its employees to remedy this defect for which it has been duly paid". Further answering, the defendants averred that the repair work which the Enterprise Electrical Company performed upon the controller was of an inconsiderable character, worth about $25.00 if properly done, and that the bill of $302.84 was "extravagantly, grossly and absurdly excessive and the payment of the same by plaintiff without authorization of defendant amounted to a flagrant breach on the part of plaintiff of its obligation of agent". Defendants further averred that if the payment alleged was made to the Enterprise Electrical Company, said payment was made by plaintiff with full knowledge of the excessive and unreasonable character of this charge, in order to obtain from the Enterprise Electrical Company the payment of a bill to it amounting to several thousand dollars which it owed plaintiff and payment of which was held up, pending the payment by plaintiff of this excessive and unreasonable charge for the repair of the controller in question. Defendants denied all the other allegations of the petition.

There was judgment for plaintiff and defendant has appealed.

The defendant, having shipped the controller to the plaintiff with instructions to repair it, it is immaterial as far as the cost of the repairs is concerned whether they were made by the plaintiff or by someone employed by it. If those costs were reasonable, they would have been due by the defendant in either case to the plaintiff or to someone employed by it. But it would seem that the defendant was aware that the plaintiff would not make the repairs itself and had entrusted them to someone else. All the objections at all times were directed to the high price charged for the repairs and not to the commission or service charge claimed by plaintiff for attending to having them made. As stated by the plaintiff, this charge covered all telegrams which were sent in this case, telephone messages which it paid, the drayage to the station to get this armature and all other services rendered in connection with it. For those services they were entitled to be paid. Daly vs. Kiel, 106 La. 170, 30 South. 254. Tropling Mandat, S. 622. The only question presented, therefore, is whether the charges for repairs, $302.84, were reasonable and just.

The amount of the charge for the repairs themselves is thus explained by M. E. Hart, doing business under the name of the Enterprise Electrical Company for the past fifteen years. He repaired the controller or starter of the defendant. Materials:

| | |
|---|---|
| 35 feet of wire for the coil | $ 5.90 |
| 26 pounds of silk magnet wire | 45.50 |
| 8 rolls linen tape | 6.00 |
| Varnish, solder and tape, etc. | 10.95 |
| | $68.35 |

He agreed with the plaintiff to furnish the labor at the price of $2.00 per hour for electricians and $1.50 per hour for helpers, and double price for labor after hours. The repairs occupied two days and two nights at the following cost:

| | |
|---|---|
| From 8 o'clock in the morning to 12 o'clock noon is | 4 hours |
| From 1 o'clock p. m. to 5 o'clock p. m. is | 4 " |
| Making straight time | 8 " |
| From 6 o'clock p. m. to 12 p. m. is 6 hours, equal to double time | 12 " |
| From 1 o'clock a. m. to 8 o'clock a. m. is 7 hours, equal to double time | 14 " |
| Equal to | 34 " |

The whole equal to one day and one night of 34 hours at $2.00 per hour, equal to $68.00; and for two days and two nights for electricians........$136.00

For the helpers, 34 hours per day at $1.50 per hour, $51.00, or 2 days.... 102.00

Making a total of ........................$238.00

Those were the prices prevalent in the years after the war, 1918-1921, on account of the scarcity of labor. Union labor was $1.00 per hour for electricians and 75 cents for helpers for day work and double that price for overtime or night work. It is notorious that many laborers consented to work only at night in order to command double wages. Even at those prices it was not a question of getting the work but of procuring the labor.

The evidence is that the plaintiff actually paid to the Enterprise Electrical Company the amount of $302.84 in a check to their order.

Nor does it matter that the price paid by plaintiff was exorbitant. It was the current price of the day.

Defendants had not limited plaintiff to the price. Defendants were in urgent need of their starter as they were stopped in their ginning operations for the want of it. They could not have bought a new starter as there were none in New Orleans,

and to have bought one elsewhere would have meant precious delay.

Nor is there any foundation for the allegation that the plaintiff paid the bill to the Interstate Company promptly, because that company owed the plaintiff "several thousand dollars" which it had threatened to hold up until this bill of $302.84 was paid".

Defendant in his brief on page 8 admits that "this charge is not sustained but is disproven".

The plaintiff denies this charge under oath and the books of his company corroborate him. Two witnesses for the defendants were examined on this subject, and all they say is that they heard Mr. Levy, vice-president of the plaintiff company, say that he paid the bill, otherwise he would not have gotten any more business from the Interstate, a conclusion easily reached in those days.

The law on the subject is contained in Article C. C. 3022 (2991):

"The principal ought to reimburse the expenses and charges which the agent has incurred in the execution of the mandate, and pay his commission when one has been stipulated. If there be no fault imputable to the agent, the principal cannot dispense with this reimbursement and payment, even if the affair has not succeeded; nor can he reduce the amount of reimbursement under pretense that the charges and expenses ought to have been less." 2 C. J. 794, S. 459.

The defendant contends that plaintiff is entitled to recover the amount which it paid Hart only to the extent that the bill of the latter was lawfully due and enforceable. He supports his proposition by a quotation from 2 C. J. 800:

"Where the payment by the agent is voluntary, his recovery against the principal is not necessarily the amount paid, as it cannot exceed the amount which he would have been forced to pay".

We believe this doctrine to be correct. In other words, whatever sum for the materials and labor Hart could have compelled the Interstate Company to pay him, this company can compel the defendant Neugas to reimburse to him. Such is the law everywhere.

We have been unable to find any case in the reports of our Supreme Court where this article has been interpreted.

Article 3022 of our Code is taken literally from the Article 1999 of the Code Napoleon, also Article 1375. The principle is derived from Pothier on Mandate, Vol. IV, p. 237, S. 68.

In 30 Dalloz Rep. Leg., p. 729, S. 324, we read:

"It is of little importance, according to the terms of our article, that the agent has spent more than the principal would have spent had he acted himself, because good faith requires that the agent shall not be a loser, which would happen if his advances were reduced to what they might have been strictly." Troplong, No. 626, p. 586.

18 Duranton, p. 255, S. 266, says that the meaning of the article is that the principal must not quibble or cavil about those expenses, although the principal might have spent a little less; but not in the sense that because the agent had not been limited in his expenses that he could recover an amount evidently exaggerated. 28 Laurent, S. 9, p. 11.

Troplong on p. 586, S. 628, says: "It suffices that his expenses have been in good faith to entitle him to be reimbursed."

1 Domat, p. 360, S. 3:

"If the expenses made by the agent exceed what the owner of the thing would have spent upon it, if he had applied himself to it, he will not cease to be bound for all that has been spent reasonably and in good faith, although with less care or economy."

1 Strahan, English Ed., p. 470, S. 1140.

The above article of our Code and the opinions of French commentators seem to have been adopted in letter and spirit by the common law.

We quote from Story on Agency:

S. 535: "Another right of the agent is to be reimbursed all their advances, expenses and disbursements, made in the course of their agency on account of, or for the benefit of, their principal. * * * Hence, all the incidental charges and expenses incurred for warehouse room, duties, freight, lightering, general average, salvage, repairs, journeys, and other acts done to preserve the property of the principal, and to enable the agent to accomplish the objects of the principal, are to be fully paid by the latter"; quoting numerous Latin, French, American and English authors.

S. 536: "But this liability of the principal proceeds upon the ground that the advances, expenses and disbursements have been properly incurred, and reasonably and in good faith paid, without any default (fault) on the part of the agent. * * * Cases may indeed occur of such peculiar exigency as will justify the agent in making advances or incurring expenses beyond what ordinarily appertains to the regular course of business, for which, nevertheless, the principal will be bound to make him a full reimbursement."

J. K. Rippard, who made the repairs, testified as to the time required to make them and the value of the work bestowed upon them. He also says that the starter did not work after it was returned to the defendants because it · was not properly connected and because the starter block was burned. At the time of the trial he was no longer employed by the Enterprise Company.

His testimony is corroborated by that of M. E. Hart, doing business under the name of the Enterprise Electrical Company, by whom the work was done.

2 C. J. 794, S. 459:

"So if an agent, acting within the scope of his authority and in good faith, ex-pends money for the benefit and account of the principal in the course of the agency he is entitled to reimbursement."

The evidence preponderates in favor of the good faith of the plaintiff and the correctness of the bill paid. Although this suit was filed in July, 1920, and was tried in December, 1922, there is no testimony contradicting the correctness of the bill sued on nor the testimony of Rippard or of Hart in support of it.

The petition prayed for, and the judgment allowed eight per cent interest from January 1, 1919, until paid.

The Civil Code Article 3025 (2994) provides:

If the attorney has advanced any sum of money for the affairs of the principal, the latter owes the interest of it from the day on which the advance is proved to have been made."

But this interest is legal and not conventional. C. C., 1936-2924. Legal interest is five per cent only.

Art. 1938 (1932): "All debts shall bear interest at the rate of five per centum per annum from the time they become due, unless otherwise stipulated."

Art. 2924 (2895): "Interest is either legal or conventional. Legal interest is fixed at the following rates, to-wit: At five per cent on all sums which are the object of a judicial demand, whence this is called judicial interest. * * *

"The amount of the conventional interest cannot exceed eight per cent. The same must be fixed in writing; testimonial proof of it is not admitted in any case."

Must be fixed in writing:

Stewart, Hyde & Co. vs. Buard & Dronquet, 23 La. Ann. 201; Merrick vs. North, 28 La. Ann. 879; Bayley & Pond vs. Stacey & Poland, 30 La. Ann. 1210; Crossley & Sons vs. Commissioners of Louisiana Savings Bank and Safe Deposit, 38 La. Ann. 74; Martin vs. Muvicy & Marcy, 40 La. Ann. 190, 3 South. 640; Young vs. Upshur,

42 La. Ann. 362, 7 South. 557; Hollowell Granite Works vs. Orleans, 144 La. 426, 80 South. 610.

Testimonial proof not admitted; the law is prohibitive; writing is of the essence of the agreement. Reid vs. Duncan, 1 La. Ann. 267; City of New Orleans vs. Cordev+iolle & Lacroix, 13 La. Ann. 268; Gerspach & Herring vs. Mullin, 25 La. Ann. 599.

Testimonial proof of rate of interest is not admissible. Reid vs. Duncan, 1 La. Ann. 265; Succession of Hebert, 4 La. Ann. 78; Lalanve vs. Breaux & Matherne, 5 La. Ann. 505; Keane vs. Branden & Semple, 12 La. Ann. 20; Gerspach & Herring vs. Mullin, 25 La. Ann. 599; Young vs. Upshur, 42 La. AnAn. 362, 7 South. 557; Fishel vs. Irwin, 132 La. 344, 61 South. 397.

A notation printed by the creditor upon a bill sent by him to his debtor in these words: "Interest charged at the rate of eight per cent per annum after thirty days from date of invoice," is not sufficient to create on the part of the debtor an obligation to pay that rate of interest. It lacks the consent of the debtor in writing. There is no such consent in this case. It takes two to make a contract. Holstein vs. Henderson, 6 Mart. (N. S.) 271; Mullony vs. McDougall, 2 La. 157; Marmiche vs. Roumieu, 11 La. Ann. 477; Smith vs. Smith, 51 La. Ann. 77, 24 South. 618; 63 N. E. 761, 763; 24 Cyc. 1168.

The interest on the judgment must therefore be reduced from eight per cent to five per cent. Heard vs. Wynn, 22 La. Ann. 469; Gerspach & Herring vs. Mullin, 25 La. Ann. 599.

But the defendants and appellants did not apply for a new trial in the District Court to correct this slight error. We shall correct it, but in the exercise of our discretion under Act 229 of 1910 we shall tax the costs of appeal on defendants. 9 Ct. App. 153 (155).

It is therefore ordered that the judgment herein be amended by reducing the interest from eight per cent to five per cent per annum from January 1, 1919, till paid, and as thus amended that said judgment be affirmed, the defendant and appellant to pay the costs of the District Court and of this Court of Appeal.