# CHARLESTON

## HOARD v. RAILROAD CO.

Submitted September 13, 1905.　　Decided February 20, 1906.

1. DEEDS—*Description—Certainty*.

   A deed granting to a railroad company land for its right of way must contain on its face a description of the land in itself certain, so as to be identified, or if not in itself so certain, it must give such description as, with the aid of evidence outside the deed, not contradicting it, will identify and locate the land, otherwise the deed is void for uncertainty. (p. 93.)

2. VENDOR AND VENDEE—*Executory Contract—Price—Interest*.

   A vendor selling land by executory contract stipulating that he must make a deed, and that the first payment of purchase money shall be made when he shall make a deed, and who delivers to the purchaser possession at the date of the contract, is entitled to interest on the whole purchase money. though the vendor be in default in making the deed, unless the purchaser set apart the purchase money for the vendor, and notify the vendor of his readiness to pay, and do not himself use the money. (p. 96.)

Appeal from Circuit Court, Wayne county.

Action by S. Floyd Hoard and Pitt Hoard against the Huntington & Big Sandy Railroad Company and others. Decree for plaintiffs, and defendants appeal.

*Reversed.*

VINSON & THOMPSON for appellants.
HOLT & DUNCAN for appellees.

BRANNON, PRESIDENT:

S. Floyd Hoard and Pitt Hoard sold to the Huntington & Big Sandy Railroad Company land for right of way for the railroad through the town of Ceredo by the following contract:

"To the Huntington & Big Sandy Railroad Company: We sell you right of way for your road through our property in Ceredo—for the sum of ten thousand dollars—to be paid one-third cash when deed is made, and the residue in one or two years thereafter, with interest on deferred payments, reserving vendor's lien in said deed to secure deferred payments. The lands herein proposed to be sold and conveyed have heretofore been agreed upon by the parties hereto, and as soon as the proper description of said property can be had we will incorporate said description, by metes and bounds, in a deed of general warranty and convey the same to you— * * * We, together with your engineer, to prepare said descriptions at the earliest practicable convenience.

You can at once begin the construction of your road over said property as aforesaid, pending the preparation of said descriptions as aforesaid.    Pitt and S. Floyd Hoard.

This proposition is accepted.    Huntington & Big Sandy Railroad Co.    By Z. T. Vinson, *President*."

This contract bears no date, but was in March, 1892. The railroad company at once took actual possession and built its road on the land, and has ever since occupied it with its road. The contract says that the engineers of the company and the Hoards should prepare a description of the land for incorporation in the deed from the Hoards to the company. Sometime after this contract was made an engineer on the part of the railroad company did furnish to said Hoards a map giving description to go into the deed; but the Hoards refused to agree to it. By some arrangement the control of the Huntington & Big Sandy Railroad Co. passed to the Ohio River Railroad Co., and then to the Baltimore & Ohio Railroad Co.

However, this seems immaterial. The matter rested in unsettled condition until 28th July, 1902, when the Hoards brought a suit in chancery in the circuit court of Wayne county against the said three railroad companies, to enforce the specific performance of said contract of sale, to recover

the purchase money, and to sell the said land for its payment. November 15, 1901, the Hoards prepared a form or blank deed and tendered it by mail to the Ohio River Railroad Co. Whether the Huntington & Big Sandy acted on it we do not know; but we will say that it was not accepted by that company.

No response to the tender was made to the Hoards. With the bill there was tendered a deed by the Hoards to the Huntington & Big Sandy Railroad Co. for the land. The Huntington & Big Sandy Co., and also the other companies, filed answers objecting to the deed tendered with the bill on the ground that as to one of the tracts it conveyed with only special warranty, whereas the said contract demanded general warranty; and objected to being compelled to accept the proposed deed because of its want of description of the seven parcels of land specified in it sufficiently certain and definite for the identification of the land. The court entered a decree enforcing the contract against the Huntington & Big Sandy Railroad Co., giving a decree for the purchase money, $10,000, with interest from November 15, 1901, the date when the Hoards sent the deed to the Ohio River Railroad Co.

From this decree the Huntington & Big Sandy Railroad Co. appeals.

Much law is cited to show that before equity will enforce performance of a contract that contract must be definite and certain, not only in its terms, but the contract must be certain, in a legal point of view, as to the property conveyed. *Ensminger* v. *Peterson*, 53 W. Va. 324. This is sound law; but the question before us is whether the deed tendered is certain. We are not inquiring whether the contract is sufficiently definite. No point is made as to that. But the question which we have to deal with is, whether the deed which the court forced upon the railroad company contains that definite description to which the purchaser is entitled. If there is any difference between the contract up for enforcement, and a deed of conveyance, in respect to certainty of description, the deed requires the fuller and better description. I think there is such difference. I think that the grantee has a right to a description fuller, more precise and definite, than is required in a preliminary contract. I will

add that this right-of-way land runs through a growing town, and along and near the Chesapeake & Ohio railroad, and near a trolley line. Under this situation, that is to last for all time, I think the railroad company is quite reasonable in demanding clearness and accuracy in its deed, because conflict between the town as to the streets, or between the railroad companies as to true location of rights of way, may readily arise. A railroad company having tracks running through a town, near to other railroads, has a need, greater than in ordinary cases, for accurate boundary of its right of way—different from farms. Here are no boundary trees, the whole surface of the ground occupied for this, that and the other use. The railroad is to exist forever. The men who laid it out will soon pass away. And in a few years they forget place. The evidence to show location existing at the date of the location will in a few years pass away. Then what are the parties interested either way to do? The muniment of title should be so definite that the right of way can be identified fifty or a hundred years hence. In all cases, but especially in this, there should be certainty. "The description of the premises conveyed must be sufficiently definite and certain to enable the land to be identified; otherwise it will be void for uncertainty." 2 Devlin on Deeds, section 1010. "The description should contain all the particulars necessary to clearly and accurately identify the property, such as its situation in the town and county, its boundaries, etc." 1 Jones on Conveyancing, section 320. A very essential thing in a description is the initial point, the beginning. In the deed which the decree compels the defendant to accept we find as to Tract No. 7 the following description:

"BEGINNING at a point in the west line of First street west of Main street, the center of which street is located by two stone monuments with brass or copper wire set in same, one of said monuments being in the intersection of the center lines of said First street west of Main and B streets, the other being in the center of said First street west of Main street and distant about 2184 feet southerly of the one above mentioned in center of First street west of Main street and B street, both monuments recently located by Chas. Silliman, C. E., and the first parties hereto. Said beginning point is distant thirty feet northerly from said center line of railroad,

measured at right angles from said center line; thence westerly and parallel to, and thirty feet distant from said center line of railroad," etc.

The grave question at once arises, Where is the beginning of Tract No. 7? It is on the west line of First street. At what point on that line? If the deed had located that point at a certain distance from those stone monuments, it would have been sufficient. We must not take the words "about 2184 feet" as descriptive of the beginning point of the right of way on the line of First street, because that is the distance between the two stone monuments. There is no point of beginning designated on the west line of First street; no guide to it. The description says, "said beginning point is distant thirty feet northerly from said center line of railroad"; but where is the center line? It does not mean the center line between the railroad rails; for the right of way extends thirty feet out from the center line each side. Now, the center line, like a tree or a rock, must have a point of location, so that it can be found to start from. This center line has no location. One place will suit it as well as another. One place on the west line of First street will suit for that beginning corner as well as another. There is no certainty here, no means to definitely locate either the beginning point or the center line. If a stone had been planted under the surface, for instance, we could appeal to it in years to come; but we have not that recourse. A civil engineer swears that he cannot locate the right of way of the company under this deed. It seems to us uncertain. The description of Tract No. 6 seems to be infected with the same uncertainty, if not other tracts. A plat referred to in the deed does not remove the objection. Besides, several stations, one the beginning of Tract No. 2, are left blank as to number in the deed. I am aware that Jones on Conveyancing, section 323, says that "The office of a description is not to identify the land, but to furnish the means of identification," and that it is only when it remains "a matter of conjecture what property is intended to be conveyed, after resorting to such extrinsic evidence as is admissible, that the deed will be held void for uncertainty in the description of parcels. If the description is sufficient to allow of identification by actual survey, it will be upheld, however indefinite it may seem to be. But if the

description is so vague that the parcel cannot be located under it, it is void for uncertainty. If the starting point of a boundary line cannot be identified, the deed is necessarily void." This Court has said that where a deed or other instrument contains enough to enable identification by applicable extrinsic evidence it will do. *Thorn* v. *Pharris*, 35 W. Va. 771; *Simpkins* v. *White*, 43 *Id.* 125; *Warren* v. *Syme*, 7 *Id.* 474. The description, however, must be such in the deed as is susceptible of being made definite by evidence outside of it. 88 Am. St. R. 710. The deed must refer to something of such certainty as will enable identification. *Westfall* v. *Cottrill*, 24 W. Va. 763. Now, there is nothing in this deed that will allow the application of oral evidence. What evidence will show the place of that beginning on First street that will answer for all time to come? So as to the center line. In the deed it is said that the land is "*supposed* to bind upon and follow the northerly line of the adjoining right of way now occupied by the Chesapeake and Ohio Railroad Company"; but there is no instrument or showing in the record of the definite location of the right of way of that company. The answer of the Huntington and Big Sandy Railroad Co. asks the court to make a survey of the land sold to it by the Hoards. As the parties to the contract had never fixed the description under the contract—as the contract contemplates a description satisfactory to both parties, and they had not agreed upon a description, this request for a judicial ascertainment of such boundary was reasonable and should have been granted. An order of survey would have given certainty. We think there was error in enforcing that deed upon the company.

The railroad company complains that the court compelled it to pay interest from November 15, 1901, the date when the Hoards mailed the blank deed to the Ohio River Railroad Company. The claim of the appellant is that by the contract the first payment was not to be made until delivery of a proper deed, and a proper deed has never been delivered. The court properly held that the deed filed with the bill was a non-compliance with the contract, in that it contained a special warranty as to one of the tracts. This defect, as also uncertainty of description, constitutes the argument by the appellant against the allowance of interest

from said date.  On the other hand, the plaintiff filed a cross-assignment of error, claiming that the court gave them too little interest; that it should have given them interest from the date of the contract, March 9, 1892, because the Huntington and Big Sandy Railroad Co. then took possession. Under the authorities we must say that the company is liable from the date when it took possession under the contract, the date of the contract, because that contract gave the company immediate possession.  Reflect that the company had the use of this land and *also* the use of the money.  It never set apart the money to the use of the Hoards.  It never notified them that it was ready to pay.  Money is worth its interest.  The clause in the contract saying that the first payment should be made on delivery of the deed was intended only to fix the date of the first payment, and had not intent actual as to interest.  I know that it is a general rule that a debt does not bear interest until maturity, in the absence of express provision otherwise; but there is a peculiar rule applicable in this case, and that is, that the vendee cannot keep both land and purchase money without paying interest. If the vendee desires to escape interest on the purchase money, even when the delay in payment is caused by default of the vendor, he must actually set aside the money for the vendor, and he must not himself take its benefit, and must notify the vendor of these facts, and that the money is lying idle.  *Steinrod* v. *Railroad*, 27 W. Va. 1.  Say that the plaintiffs were negligent or blameful in not making a deed soon.  That would not excuse the appellant from interest, because it had the use of both money and land.  It did not deposit the money to the credit of the vendor in a bank, or in any way set it aside, but used it.  It did not offer to pay.  It did not request a deed.  When the deed form which the Hoards proposed to make was sent to the Ohio River Co., the lessee of the road, whose vice president and manager was also president of the Huntington and Big Sandy Co., the deed was retained; no objection made, no response was made. The Hoards wrote to the Ohio River and Baltimore and Ohio companies, tried to settle the matter.  So the evidence shows, and so is the probability, as we presume they wanted the large debt.  When the description sent by the engineer was not accepted and the Hoards requested a change, it was the

duty of the companies to confer with Hoards and settle description, because the contract made it equally the duty of both sides "to prepare said description at the earliest practicable convenience." There is no evidence that the companies offered to pay and demanded a deed, or made effort to settle description. It was just as much the duty of the railroad company to furnish proper boundaries, and to confer with the Hoards as it was incumbent upon the Hoards to do the like. Under many decisions in the Virginias, as I think elsewhere generally, the company must pay interest from the time of the contract. *Brockenborough* v. *Blythe*, 3 Leigh 619; *Oliver* v. *Hallam*, 1 Grat. 298; *Bailey* v. *James*, 11 Grat. 468. The company had as full enjoyment of the land as if a deed had been made, and must pay interest.

Therefore, we reverse the decree and remand the case to the circuit court with directions to cause a survey to be made, or in some way to fix proper and sufficient description of the said land, and to enforce a specific performance of the contract after providing for a proper deed from the Hoards to the appellant company, containing proper description.

### ON REHEARING.

A rehearing of this case only confirms the conclusion expressed in the above opinion. The theory of the company is, that it was first the duty of the Hoards to make a deed, and not doing so, they were in fault, and that until the deed was made there could be no interest. But was it any more the duty of the Hoards to come forward in reasonable time with a deed and ask payment, than it was the duty of the company to come forward with the money and ask a deed? One took one obligation on itself, as well as the other took another obligation. *Gas Co.* v. *Elder*, 54 W. Va. 335. Page on Contracts, Vol. 3, section 1470, says: "Concurrent covenants are those which by the terms of the contract are to be performed at the same time by each of the parties bound to perform them. Either party must be ready to perform to put the other in default. Thus under a contract for a sale of reality if no stipulation is made as to the order of time at which the deed is to be delivered and payment made, these acts are concurrent. Neither party can treat the other as being in default either for the purpose of con-

sidering the contract as discharged, or for bringing an action for damages." Waterman on Specific Performances, section 444 says: "When one is to pay money, and the other is to give a conveyance, no time fixed, and no provision that either shall be done first, the covenants being mutual and dependent,. one is not bound to pay without receiving his conveyance, nor the other to part with his land without receiving his money." In section 448: "In this country, the prevailing practice is, that the vendor shall prepare the deed, and have it ready when called for. This would seem to be the obvious meaning of the parties when the seller covenants that he will convey the title to the purchaser." In that great friend of the lawyer, American and English Encyclopedia of Law, (2d Ed.), Vol. 29, 689, the law is thus stated: "Dependent unless contrary intention appears. The general rule is to consider all covenants dependent, in the absence of a contrary intention, for this is the way most men make their bargains, neither party intending to perform unless the other at the same time performs on his part. And the same is held when no time is fixed for performance by either. When it appears that the acts are to be performed at the same time, the covenants are considered mutual and dependent. Ever since the time of the famous note of Sergeant Williams to the case of *Pordage* v. *Cole*, it has been very generally held that when a time is fixed for performance on one side, and the performance on the other side is to, or may, happen after such time, the covenants are independent." Now, how are the Hoards more in default than the company? In fact, this position is fortified by adding that the contract made it the duty of the company to participate in the preparation of the deed by meeting the Hoards and agreeing upon a material part of the deed, the specification of the boundaries. And as the Hoards expressed dissent in the description by the engineer, it was then the company's duty to confer with the Hoards; but it did not do so, made no effort to agree year after year. So the company was in default. But say that neither side was in default. A court of equity finds that the parties contemplated interest after a reasonable time, as they must be taken to have contemplated completion of the contract in a reasonable time; but owing to mutual neglect it was not so completed. The

long delay was not in the contemplation of either side. The railroad company is in just as full and beneficial possession as if a deed had been made the next day after the contract, and it has the use of the money justly belonging to the Hoards. What shall a court of equity do in this state of things? If it lets the purchaser through so many years keep both the land and money, without interest, it participates in that which is unjust and against good conscience. The *Steenrod case*, 27 W. Va. 1, makes this a case of dependent and mutual covenants, and compels us to make the railroad company pay interest. In *Oliver* v. *Hallman*, 1 Grat. 298, the receipt for part payment for the land said, "Which I bind myself, my heirs to make to said Wade a good and lawful title to before I call on him for any further payment", and yet the decision made the purchaser pay interest from the date of purchase. Why? Because the purchaser had the use of both land and money. The cases there cited will sustain that decision. Pomeroy on Contracts, section 428, says: "If the vendor is in fault and delays to convey legal title, the vendee does not generally lose anything substantial by delay; he has the possession all the time, and the rents and profits, and it is right and fair that he should pay interest on the purchase money until the whole is paid up." In section 429, "The general rule is well settled that, where the contract is not completed until after the time stipulated for that purpose, but the court nevertheless decrees a specific performance, it will adjust the equities of the parties by placing them as far as possible in the same position which they would have occupied had the agreement been completed at the prescribed day, and to that end it will allow to the purchaser the rents and profits, and to the vendor interest upon the purchase-price from and after that date." Law found in 29 Am. & Eng. Ency. L., (2d Ed.), 709, will speak the same. Here it happened that the contract was not executed as it meant, or within the time, and on principles of equity and law, it is just to charge interest from the date of contract. I say again the contract contemplated interest. The parties did not complete the contract as they expected. We cannot rescind. Neither side asks it, and rescission would be disastrous to the railroad company. A court of equity must take things as it finds them, and do equity, which is, upon a great vol-

ume of authority, nowhere stronger than in the two Virginias, to call upon the railroad company to pay interest for the use of money justly belonging to the Hoards.

We therefore repeat the decree heretofore made, reversing the decree and remanding the cause for further proceedings in accordance with principles stated in the former and this opinion.

*Reversed.*

SANDERS, JUDGE, (*dissenting in part.*)

I concur in the decision of this cause, in so far as it reverses the decree of the circuit court, and remands the cause, on the ground that the description in the deed tendered is insufficient, but I cannot agree to that part of the decision which requires the company to pay interest on the purchase money from the time it entered into possession of the property under the contract. I might almost say that for the reason I am willing that the decree shall be reversed, on account of the insufficiency of description, for the same reason I am unwilling to concur in the other point decided, for it seems to me anomalous to say that under the circumstances of this cause, the grantors, although they have not shown themselves entitled to decree for the purchase money because they have not tendered a proper deed, yet that they are entitled to interest on the purchase money from the date of the contract, because at that time the company took possession. I realize full well the force of the position taken in the opinion of the Court, that the general rule is that a vendee is entitled to interest from the time possession is taken of the premises by the vendor, but this rule is subject to exceptions, which are as firmly imbedded in the law as the rule itself, and from an examination of the authorities relied upon to support it, it will be seen that in no case in which this doctrine is announced, has the court had before it a contract such as is here presented. In none of them had the parties stipulated as to the payment of interest, but the vendor had been in default as to the payment of the principal, and the court attached interest as a matter of equity in the absence of such stipulation. This differentiation runs through all the cases. The contract, in this respect, is as follows: "We (the plaintiffs) sell you right of way for your road through our property

in Ceredo for the sum of ten thousand dollars, to be paid one-third . cash when deed is made, and the residue in one and two years thereafter, with interest on deferred payments. * * * We will incorporate said description by metes and bounds in a deed of general warranty and convey the same to you." Here the contract is express. From its terms it is clear that no payment was due until the deed was made. The balance of the purchase money was then to be paid in one and two years, and interest was payable upon the deferred installments. Hence, it seems to me, it cannot be contended, the parties having thus stipulated as to when interest should be payable, that the plaintiffs should not be required to comply with their contract before being placed in a position to demand interest. The making of the deed and performance of the contract is made a condition precedent to the right to demand the cash payment.

Nor does the case of *Steenrod's Adm'r* v. *R. R. Co.*, 27 W. Va., when applied to the circumstances here, support the position taken. The fifth point of the syllabus is: "The general rule in ordinary contracts for the sale of land, which contain no stipulation for interest and do not specify any day for completion, is that the purchaser is liable for interest on the purchase money from the time he takes possession, especially if he has received rents and profits." And the court says, showing that it was, in that case, the duty of the vendee to tender the money before being entitled to a deed, "Referring to the agreement we find that it provides that on payment of the damages the vendor agrees to convey the land on reasonable demand." The court also says: "The contract is that the payment is to precede the conveyance, and the latter is to be made only upon reasonable demand after the payment." Very different is this case. The rule is well stated in *Jourolman* v. *Ewing*, 80 Fed. Rep. 608: "But the question of interest in case of suit brought upon a contract wherein the payment of interest is made the subject of express stipulation, and is thereby made a part of the obligation, stands upon a different ground. In such case it is made a matter of agreement between the parties. They are supposed to have considered all the circumstances bearing upon the propriety of their stipulation, and this term of the contract is as binding as any other. The courts have no right

or authority to annul the agreement which the parties have, in contemplation of the circumstances in which they were dealing, seen fit to make.   *   *   *   The court has no more right to disregard the agreement upon the subject of interest than it would have to abate a part of the principal debt if the facts had been proven which showed that the price paid for the land was improvident."

In *Mayo* v. *Purcell*, 3 Munf. 241, the court held that a purchaser of land being thoroughly informed of defects in a vendor's title, and agreeing nevertheless to pay interest on the purchase money from a certain day, would not be relieved from paying such interest, on the ground that he could not get possession of a part of the land, which he knew at the time of entering into the agreement, was held by another person.

In *Hepburn* v. *Dunlop*, 1 Wheat. 179, the vendor was indebted to the vendee, and the sale was made to pay the debt. This was in 1799, but a good title was not made to the vendee till 1809.   The court held that the vendor must pay interest on the debt till that time; in other words, the purchaser paid no interest till he got a good title.

In *Lofland* v. *Maull*, 1 Del. Ch. 359, by a contract for the sale of land, the purchase money was made payable in future installments, and there was no stipulation in the contract as to the time for the delivery of the possession of the land. After the sale, and before all the installments had become due, the purchaser, with the vendor's consent, entered into possession.   It was held that he did not thereby become chargeable with interest on the unpaid purchase money from the date of such possession, in the absence of a stipulation to that effect in the contract of sale.

In *Birdsall* v. *Waldron*, 2 Edw. Ch. R. 15, the Vice Chancellor decided that the seller, although in possession, would not be bound to pay his money into court before obtaining a title, where he went into possession with the understanding that he was not to pay it until he had a title.   And it was also said that if there had been delay in the performance, without the default of the purchaser, he would not, although in possession, be obliged to pay the purchase money.

In *Blount* v. *Blount*, 3 Atk. 636, it is said that neither in the purchase of an estate in possession, or in reversion,

whether purchased under a private agreement or purchased under a decree of sale, can it be laid down for certain that from the time of possession, a purchaser shall pay interest; that the court, in awarding interest, never regards the execution of articles for a purchase, but the time of the execution of the conveyance. and even then the purchaser shall pay interest only from the time possession is delivered.

"The law creates an obligation to pay interest, only where the debtor is put in default for the payment of the principal; and in such a case it runs only from the default." *Reid* v. *Duncan*, 1 La. Ann. 265. See, also, *Withworth* v. *Hart*, 22 Ala. 343; *Gay* v. *Gardner*, 54 Me. 477; *Hubbard* v. *Charleston*, &c., R. R. 11 Metc. (Mass.) 124.

Except where the parties themselves have failed to provide for the payment of interest in the contract, no court has pretended to fix an interest charge. And in the cases in which a purchaser has been held to pay interest, there was either no contract, or the purchase money had become due. Here the purchase money did not become due until the title was made. The parties expressly stipulated that only the deferred payments should bear interest.

The second point of the syllabus of the opinion makes no reference to that part of the contract which provides that interest shall be paid upon the deferred installments of purchase money. This provision is a material one, and cannot be done away with by ignoring and not considering it. But in the opinion it is said, "That clause of the contract saying that the first payment should be made on the delivery of the deed was intended to define the date of the first payment, and had not intent actual as to the interest." This might be so, if nothing else was said, but if it had not such intent, why add, after providing that the first payment should be made on execution of the deed, "residue in one and two years, with interest on the deferred payments?" If it was not the intention that only the deferred installments should bear interest, and then only after the delivery of the deed and making of the first payment, why say so in language that is unmistakable? The same clause that fixes the time of the first payment as of the delivery of the deed, expressly says that the deferred payments shall bear interest. Certainly it cannot be said that the parties have not the right to agree as to

the date from which interest shall be computed, yet the Court, in its opinion, conveniently gets rid of the provision in regard to interest by ignoring it.

While I do not concede the correctness of the theory advanced in the opinion filed on rehearing, that the covenants were dependent, and that it was as much the duty of the company to demand a deed as it was the duty of the Hoards to make and tender it, yet, on February 16, 1893, the engineer of the company prepared a map and forwarded it to S. Floyd Hoard, with the following letter of transmittal: "Enclosed find map with right of way put on and colored. This will give sufficient data for description I think. I hope you will prepare it and send to Vinson to incorporate in deed as soon as possible." After receiving this map, was it not the duty of Hoards to prepare and forward description, as requested? Had not the railroad company done all that was required of it, under the terms of the contract, granting that it was its duty to prepare description? Not having complied with the request of the engineer, and not having made any pretense of tendering a deed until the lapse of so long a time, the plaintiffs are not in a position to make the demand they are now making. By thus early complying with the provision of the contract, requiring them to co-operate in the preparation of the deed, even if it could be so construed as to make it the duty of the company to co-operate, the duty to complete the transaction was cast upon the Hoards. This they never did, nor pretended to do, until 1901, when they tendered a deed which contained a description of their own making, to which the engineer of the company refused to agree, and which he had no hand in preparing, and expressly testifies that the description offered by the plaintiffs is such that it is impossible to locate the land conveyed upon the ground under it, and the Court, in its opinion, finds that this is so, and that the land cannot be sufficiently identified. It is said that the delay was not contemplated by the parties. Possibly so. But who must suffer for the delay? Certainly the railroad company should not be made to do so, after having prepared and forwarded description, with the request that it be mailed to its attorney.

Viewed in the light of all the circumstances surrounding

this case, I cannot agree that the plaintiffs are entitled to interest, until they have, by the tender of a proper deed, placed themselves in a position to demand payment of the purchase money.