# CHARLESTON.

### G. W. Perdue v. S. C. Ballengee.

Submitted January 25, 1921.　Decided February 1, 1921.

1.　Quieting Title—*Deed May be Removed as Cloud Although Entirely Ineffectual.*

　　Equity has jurisdiction, at the suit of the owner, to remove as a cloud upon his title to land a deed purporting to convey an interest therein, even though the same may be entirely ineffectual for that purpose. (p. 620).

2.　Same—*Owner not Ousted of Possession by Use of Road Over Tract Under Claimed Easement.*

　　The owner of a tract of land in the actual possession thereof, over which the owner of an adjoining tract claims to have and is using a road, is not so far ousted of possession of that part so used as a road by such use as to prevent him from maintaining a suit in equity to remove as a cloud upon his title a deed purporting to convey the easement claimed by such adjoining owner.　(p. 621).

3.　Easements—*Acquisition of Servient Tenement by Owner of Dominant Tenement Extinguishes Easement.*

　　The acquisition of a tract of land, over which there exists an easement appurtenant to an adjoining tract, by the owner of such adjoining tract, extinguishes such easement. (p. 622).

4.　Same—*Proof Necessary to Establish Right of Adjoining Landowner to Use of Road by Prescription Stated.*

　　To establish in an adjoining landowner the right to use a road over the lands of another by prescription, it must appear that the road so claimed has been used continuously under a claim of adverse right for ten years, and the evidence to establish this user must be clear and unequivocal.　If there is a substantial doubt as to such user during any substantial part of the time necessary to create the right by prescription, it will be denied. (p. 624).

Appeal from Circuit Court, Summers County.

Suit by G. W. Perdue against S. C. Ballengee.　Decree for plaintiff and defendant appeals.

*Affirmed.*

*Thos N. Read,* for appellant.
*Wm. H. Sawyers* and *T. G. Mann,* for appellee.

RITZ, PRESIDENT:

This appeal is prosecuted from a decree of the circuit court of Summers county enjoining the defendant from using a road over the lands of the plaintiff, and cancelling a deed made to him purporting to convey an easement over plaintiff's lands, as a cloud upon his title thereto.

On the 29th of January, 1887, G. W. Chattin was the owner of a tract of land lying in a bend of Greenbrier river in Summers county, and on that date he conveyed to his son J. D. Chattin a tract of 37½ acres out of this larger tract. In this deed he also conveyed a right-of-way from the 37½-acre tract across the remaining land to the county road, to be located so as to do the least damage to the remaining lands. On the 10th of October, 1893, J. D. Chattin conveyed this 37½-acre tract, together with the easement over the remaining lands, to his sister Sallie J. Ballengee. On the 30th of January, 1894, G. W. Chattin conveyed out of the lands remaining to him a tract of 28 acres to his daughter Sallie J. Ballengee, together with a right-of-way extending from this 28-acre tract of land up the river to the county road, being an entirely different right-of-way from that mentioned in the conveyance made by him to his son J. D. Chattin. On the 24th of July, 1896, G. W. Chattin, having died, his heirs conveyed to Sallie J. Ballengee the remainder of the tract of land out of which the 37½-acres and the 28 acres had been carved, so that at that time she became the owner of all of the tract originally owned by her father G. W. Chattin. She held the same until the first of January, 1904, upon which date she conveyed to her son, the defendant S. C. Ballengee, a tract described in the deed as containing 68 acres, and which was composed of the two tracts of 37½ acres and 28 acres, and in this deed she also conveyed, as appurtenant to the 68-acre tract, a right-of-way over the remaining tract, up the river to the county road, being upon the same location as the right-of-way George W. Chattin had conveyed in the deed of January 30, 1894, as appurtenant to the 28 acres. No mention was made in this deed of any other right-of-way. On the same day she conveyed to another son, Homer Ballengee, the remainder of the tract of land, described

in the deed as containing 90 acres, and this deed referred to the fact that a right-of-way had been conveyed thereover on the location along the river bank as appurtenant to the tract conveyed to the defendant S. C. Ballengee. At the time of this conveyance there was a house upon the 68-acre tract conveyed to the defendant, and upon that part of it which was formerly the 37½-acre tract. On the 30th of August, 1909, Homer Ballengee conveyed the 90-acre tract which had been conveyed to him by his mother, as above stated, to the plaintiff G. W. Perdue, and in the deed referred to the outlet over the same from the 68-acre tract, and granting the right to G. W. Purdue to use this outlet in common with the owner of the 68-acre tract. On the 14th of April, 1919, after this controversy arose, the defendant procured from his mother Sallie J. Ballengee a deed which, after reciting the conveyances above referred to, undertook to convey to him, as appurtenant to his tract of land, a right-of-way across the 90 acres owned by the plaintiff Purdue, upon the location upon which the road referred to in the deed from G. W. Chattin to his son J. D. Chattin had been used. This suit was then brought by the plaintiff Purdue to set aside this conveyance as constituting a cloud upon his title to the 90-acre tract of land, and to enjoin the defendant from exercising any easement over his tract of land except that conveyed to him by the deed of January 1, 1904, from his mother.

The defendant demurred to the bill, and upon this appeal insists that his demurrer should be sustained, upon the ground that if, as contended by the plaintiff, the deed of April 14, 1919, from Sallie J. Ballengee to him was not effective to convey any estate, the said Sallie J. Ballengee, having long before that time parted with all of her estate in both tracts of land, it could not constitute a cloud upon the plaintiff's title; and upon the further ground that if, as alleged in the bill, the defendant was using the right-of-way upon the location described in the bill, the plaintiff was not in possession thereof, and could not maintain a suit in equity to remove a cloud. There is no merit in either of these contentions. The fact that the deed attempting to convey the easement may have been

ineffectual for that purpose does not prevent it from being a cloud upon plaintiff's title to the land. It attempts to convey an easement therein, and standing on the record constitutes an infirmity in his title. It is held that the fact that a deed, or other writing, which it is claimed constitutes a cloud upon title, may be void, is not ground for denying jurisdiction in equity to remove the same. *Austin* v. *Brown*, 37 W. Va. 634; *Ambler* v. *Leach*, 15 W. Va. 677; *Collins* v. *Reger*, 62 W. Va. 195; *Jones* v. *Crim*, 66 W. Va. 301; *Tennant* v. *Fretts*, 67 W. Va. 569. Nor can it be said that the plaintiff is not in possession so as to give him the right to bring his suit in a court of equity. It is quite true that the bill shows that the defendant has been using this right-of-way over the plaintiff's land, but his possession of the land occupied by the road, by reason of this user, is not at all exclusive. The plaintiff is in possession of it for all purposes, even conceding the defendant's right to the easement, except such as would deny its use for that purpose, and this possession will sustain his right to go into a court of equity to remove the cloud cast upon his title by the deed to the defendant. The plaintiff could not maintain a suit in ejectment or unlawful entry and detainer, for the very reason that he is not excluded from the possession. As to when ejectment or unlawful entry and detainer will lie against one exercising an easement over the lands of another, see *Hicks* v. *City of Bluefield*, 86 W. Va. 367, 103 S. E. 323. It is quite clear from the doctrine announced in that case that the user by the defendant here was not so exclusive as to place the plaintiff in a position to resort to an action at law to try the title.

The defendant insists, however, that under the facts proven in this case he has the right to pass over the plaintiff's land upon the location in controversy, because this way was originally appurtenant to the 37½-acre tract conveyed to J. D. Chattin by G. W. Chattin, and which 37½-acre tract is now owned by him as a part of the 68 acres conveyed to him by his mother; that the deed made to him by his mother on the 14th of April, 1919, conveyed to him this right, and that he is entitled to exercise it under that deed; and further, that he has acquired the right by prescription, having, as he contends,

used this right-of-way continuously for a period of more than ten years without denial of his right to such use on the part of the plaintiff.

That the road now in question was used by J. D. Chattin as an incident to the occupancy of the 37½-acre tract is proven beyond dispute, and that this 37½-acre tract is now owned by the defendant is likewise undisputed, but does the fact that he became the owner of a tract of land which included this 37½ acres also have the effect of vesting in him the easement over the 90-acre tract which had been used as appurtenant to the 37½-acre tract when it was owned as a separate tract? As before shown, Sallie J. Ballengee, the mother of the defendant became the owner of all three of the tracts of land, to-wit, the 37½-acre tract, the 28-acre tract, and the 90-acre tract, being the remainder of the G. W. Chattin farm, and she remained the owner of the entire farm from 1896 until 1904, when she conveyed 68 acres of it to the defendant, and the remaining 90 acres to her other son, Homer Ballengee, who subsequently conveyed the same to the plaintiff. During the time that Mrs. Ballengee owned the whole farm this road was used by those living on the farm as an outlet to the public highway. Of course she, being the owner of all of it, had a right to make any use she pleased of it, but was there an easement existing during this time appurtenant to the 37½-acre tract? It must be borne in mind that an easement is a dominant estate. The owner of it holds it adversely to the owner of the land, and can there be such a thing as a party holding an estate in his own land adverse to himself? It is clearly established that when the owner of a tract of land to which an easement is appurtenant acquires the tract upon which the easement is a burden, the servient and dominant estates become merged, and thereafter there exists but one estate. The easement ceases to exist. See *Pingley* v. *Pingley,* 82 W. Va. 228, and authorities there cited. It is quite clear that during the time that Mrs. Ballengee was the owner of this land there was in existence no easement over any part of it as appurtenant to any other part. The easement that had been theretofore appurtenant to the 37½-acre tract became merged in the other

estates owned by her in the land, and passed out of existence. It is quite significant, too, that when she conveyed the 28-acre tract to her son, the defendant, she specifically granted to him a right-of-way up the river, and made no mention of any other easement over the land conveyed on the same day to his brother. If the right-of-way now in controversy passed to him as appurtenant to the 37½-acre tract, it is just as true that the right-of-way up the river would pass as appurtenant to the 28-acre tract. It must also be borne in mind that the 37½-acre tract was not conveyed to the defendant as a separate tract of land. The conveyance to him was of 68 acres, which included the 37½-acre tract. When Mrs. Ballangee became the owner of all of the land she had a right to divide it up in any way she pleased, and to convey it to whom she pleased. She did divide it into two tracts, one of 68 acres, which she conveyed to the defendant, and one of 90 acres, which she conveyed to her other son. The 68-acre tract had no outlet to the public road, and it may be that if no provision had been made in the deed for such an outlet through the other tract of land, a way by necessity would exist. However, provision was made for this by the grantor, and as appurtenant to this 68 acres a right-of-way up the river was granted. Of course, when Mrs. Ballengee made the deeds of January 1, 1904, to her two sons, she conveyed everything she had in this Chattin farm, and her subsequent deed attempting to convey an easement over one of the tracts to the owner of the other passed no title thereto, and vested no interest in the grantee in such deed.

The defendant contends, however, that aside from the conveyance above referred to, he has acquired this easement by prescription; that he has used the same for more than ten years without permission from the owner of the 90-acre tract, and without any objection to his use thereof by the owners of that tract of land. It appears that at the time the defendant secured the deed to the 68-acre tract of land, the way in question over the 90-acre tract was being used as an outlet from the farm generally; that shortly thereafter the house on the 68-acre tract was destroyed by fire, and that another house was not built thereon until about the year 1913; that during these interven-

ing years the 68-acre tract, or parts thereof, was rented to various persons. A number of these tenants testify in this case. Only one testifies that he made any use of the way in question, and this one says that he was occupying the land in 1903, and perhaps part of 1904, and that during the time he occupied it as a tenant he used the way now in controversy without any objection upon the part of the owner of the 90-acre tract. It is clear that during the larger part of his tenancy the whole boundary of land was owned by Mrs. Ballangee, and, of course, she had a right to permit her tenants to use any part of it for any purpose. A number of other witnesses who were tenants upon this 68-acre tract of land, or upon parts of it after 1904, and before the house was re-built thereon, testify that in going to this land they used the right-of-way along the river bank, and never used the road involved in this controversy. There is a good deal of evidence by witnesses who have known the whole boundary of land for many years to the effect that there had always been a road upon the location, or practically upon the location, of the road now in controversy, but none of these witnesses testify, except in the most general terms, that any use was made of this road in connection with the 68-acre tract from the time that the old house thereon was burned until the new house was erected and occupied by the defendant about the year 1913. It must be borne in mind that in order to acquire an easement by prescription over the lands of another, proof of the continuous use thereof for a period of ten years must be clear and unequivocal. There must be no doubt about the right having been exercised during all of that time under such circumstances as indicate to the owner of the land that the one claiming the easement is claiming it as of right. If there is any equivocation or any substantial interruption, it will destroy the right claimed. The plaintiff contends that after the defendant built his new house on the 68-acre tract of land he permitted him to use the road in question as an outlet to the public highway; that when the defendant moved into his house they had a conversation in regard to using this road instead of the road along the river, and that he agreed with the defendant that he might use it in lieu of the

other road, provided he maintained gates at each end of it, and kept the gates securely shut, so as to prevent trespassing upon his land, and that it was under this arrangement that the defendant has been using the road ever since. This is denied by the defendant, who insists that he never had any arrangement with the plaintiff for the use of this road, but that he has used it ever since he has lived there under a claim of right. The plaintiff further contends that at the time the defendant moved into his new house on the 68-acre tract of land there was no gate or passage way through the line fence separating the 68-acre tract from the 90-acre tract; that while there had been a gate or passway through that fence theretofore, it had been abandoned, and the fence was built solidly all the way along this line. In this he is supported by many witnesses, some of whom testify that the old gate was still in the fence, but was so fastened as not to allow its use as a passway. The defendant and other witnesses controvert this, and contend that there was a gateway through this line fence in use at the time he moved into his new house. The judge of the circuit court, at the request of the parties, went upon the land, and made a personal examination of the situation as it appeared at the time, and after this examination and his consideration of the evidence came to the conclusion that the defendant had no such easement over the plaintiff's land as he claimed, either by prescription, or by the deed from his mother above referred to. We think this conclusion is entirely justified by the evidence. Conceding that the use of this road by the defendant was not by the permission of or under any arrangement with the plaintiff, still there is no proof of an unequivocal adverse user for the period of ten years next prior to the institution of the suit. The evidence of its user prior to 1913 in connection with the 68-acre tract is inconclusive and equivocal. Those who were actually farming the 68-acre tract testify that in connection with their operations thereon they used the other road, and not the road in controversy. The defendant's own testimony does not make out such an adverse user of this road as would give him an easement over the plaintiff's land by prescription. It only shows such adverse user beginning with the

year 1913 when he occupied his new house. This user was not sufficient to vest in him an easement over the plaintiff's farm.

We find no error in the decree complained of, and the same is affirmed.

*Affirmed.*