431 S.E.2d 95

**HIGHWAY PROPERTIES, a Limited Partnership, a West Virginia Limited Partnership, Plaintiff Below, Appellant,**

v.

**DOLLAR SAVINGS BANK and New Market Corporation, a Subsidiary of Dollar Savings Bank, Defendants Below, Appellees.**

No. 21366.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 1993.

Decided May 25, 1993.

William W. Talbott, Webster Springs, for appellant.

Frederick A. Jesser, III, Jesser & Harrington, Fayetteville, for appellees.

PER CURIAM:

The appellant, Highway Properties, a limited partnership, brought suit against Dollar Savings Bank (Dollar Savings) and its subsidiary New Market Corporation (New Market) seeking to enforce an easement for ingress and egress to and from its

property across the adjacent property of Dollar Savings and New Market. The trial court concluded that the doctrine of merger extinguished Highway Properties' easement. This finding was based on the premise that both tracts were derived from a common owner, Fayette Square Limited (Fayette Square). When Fayette Square obtained these tracts, reciprocal easements were contained in its deed; however, it appears that the trial court reasoned that because Fayette Square was the common owner of the two tracts, the reciprocal easements were extinguished.

The property in controversy originally was owned by North Hills Group, Inc. (North Hills), a West Virginia corporation, and consisted of approximately 36 acres. It is located near Oak Hill, West Virginia, adjacent to U.S. Route 19. In 1983, a developer wanted to create a shopping center on the property and a limited partnership was created called Fayette Square. By a deed dated December 29, 1983, North Hills conveyed the 36–acre tract to Fayette Square. In that conveyance, the property was conveyed by specifically described parcels numbered one through five.

The two largest parcels, Parcel One consisting of 17.45 acres, and Parcel Five consisting of 16.4 acres, are the parcels involved in this litigation. Despite their parcel numbering in the 1983 deed, no dispute exists that these two tracts are adjacent to each other.[1] This litigation stems from the current owners of Parcel Five, Highway

Properties, seeking to cross Parcel One in order to reach the main access road which adjoins Parcel One.

The 1983 deed to Fayette Square contained this single provision with regard to easements: "It is agreed and understood that there is common parking and rights-of-way or easements in, to and across all parcels for ingress and egress from and to all other parcels." In subsequent transfers by Fayette Square, even more general language was used to describe the easements. By deed of trust dated September 1, 1984, Fayette Square conveyed to Dollar Savings Bank the 17.45 acre tract known as Parcel One. The deed contained only this language: "subject to easements and restrictions of record[.]" Fayette Square eventually defaulted on its loan to Dollar Savings Bank and the property was sold under the deed of trust to the appellee, New Market, a subsidiary corporation of Dollar Savings.[2]

By deed dated February 25, 1987, Fayette Square conveyed the 16.4 acre tract known as Parcel Five to Highway Properties, which was part of the same property that Fayette Square obtained in its 1983 deed from North Hills. In the 1987 deed from Fayette Square, Highway Properties received by way of general language all rights, privileges, rights-of-way, and easements owned by Fayette Square on the property conveyed.[3]

Thereafter, Highway Properties sought to utilize the 16.4 acre tract for commercial

---

1. Three much smaller parcels also were conveyed in the 1983 deed. Parcel Two consisted of approximately 41,763 square feet, Parcel Three contained 37,699 square feet, and Parcel Four contained 11,512 square feet.

2. Thomas H. Gilpin, successor trustee to Dollar Savings, conveyed the 17.45 acre tract to New Market by way of an outconveyance deed dated October 30, 1991. According to the 1991 deed, the sale under the September 1, 1984 deed of trust occurred on August 28, 1991.

   The 1991 deed to New Market concludes with this language: "The conveyance hereunder is subject to ... any and all liens and encumbrances of any nature whatsoever prior to that of the Deed of Trust, as amended, including without limitation any rights of way or easements affecting said property." Moreover, the phrase "subject to easements and restrictions of

record" appears at the end of the description of the 17.45 acre tract.

3. The 1987 deed contained this language:

   "There is likewise conveyed, for the consideration aforesaid, all rights, privileges, rights-of-way and easements, minerals and mineral rights, owned by the party of the first party over, across and under the above-described property.

   "This deed is made and accepted subject to all lawful and continuing reservations, exceptions, restrictions, conditions, rights-of-way and easements made and contained in all deeds of record in the chain of title to the above-described property and to all valid liens of record against said property incurred by Fayette Square, Limited Partnership, to secure indebtedness."

development, but was denied access to it. According to Highway Properties, the only access to this property was the easement on the 17.45 acre tract owned by Dollar Savings and its subsidiary New Market. When the matter of access could not be resolved amicably, Highway Properties sued Dollar Savings and New Market asserting that it had an easement by virtue of its 1987 deed across their property. The defendants claimed that the easement was extinguished when North Hills made its original conveyance to Fayette Square in 1983.

At the urging of Dollar Savings and New Market, the court below decided that a merger between the dominant and servient estates occurred in the 1983 deed and the easements were extinguished. Merger occurred in spite of the fact the deed contained easement language, reciting reciprocal rights-of-way for ingress and egress and parking on the five tracts, because Fayette Square received fee simple title to the five parcels.

We recognized the doctrine of merger in Syllabus Point 2 of *Henline v. Miller*, 117 W.Va. 439, 185 S.E. 852 (1936):

> "When the owner of a dominant estate acquires the fee simple title to the servient estate, an easement appurtenant to the dominant estate is extinguished."

*See also Perdue v. Ballengee*, 87 W.Va. 618, 105 S.E. 767 (1921). In *Pingley v. Pingley*, 82 W.Va. 228, 229, 95 S.E. 860, 861 (1918), we explained the basis for this doctrine:

"It seems to be firmly established that where the owner of land over which an easement is claimed as appurtenant to another tract of land becomes also the owner of such other tract, the easement is merged in his superior estate. No one can use part of his own estate adversely to another part, and the proposition, therefore, must be true that if the owner of one of the estates, whether the dominant or servient one, becomes the owner of the other, the servitude which one owes to the other is merged in such ownership, and thereby extinguished." (Citations omitted).[4]

▪ Independently of the doctrine of merger, it is our belief that there is a more fundamental problem foreclosing Highway Properties' easement. In the law of real property, it is recognized that a right-of-way or other type of easement constitutes an exception or reservation to the full fee simple interest. *See Cottrell v. Nurnberger*, 131 W.Va. 391, 47 S.E.2d 454 (1948).[5]

▪ Where such rights are created in a deed, we have held that it must be done with some certainty. As we stated in Syllabus Point 2 of *G & W Auto Center, Inc. v. Yoursco*, 167 W.Va. 648, 280 S.E.2d 327 (1981):

> " 'In order to create an exception or reservation in a deed which would reduce a grant in a conveyance clause which is clear, correct and conventional, such exception or reservation must be expressed in certain and definite language.' Syllabus Point 2, *Hall v. Hartley*, 146 W.Va. 328, 119 S.E.2d 759 (1961)." [6]

---

4.  There are limitations to the concept of merger, as summarized in 28 C.J.S. *Easements* § 57(b) (1941):

> "In order to extinguish an easement by merger, there must be unity of title and, according to some decisions, of possession and enjoyment of the dominant and servient estates, coextensive in validity, quality, and all other circumstances of right. Ways of necessity and natural easements are, strictly speaking, not subject to the doctrine of merger."

*See McNeil v. Kennedy*, 88 W.Va. 524, 529, 107 S.E. 203, 205 (1921) (Merger "would not debar him from his right of way acquired by prescription through the lands of other servient owners.")

5.  We also said in *Bennett v. Charles Corp.*, 159 W.Va. 705, 710, 226 S.E.2d 559, 563 (1976):

> "An easement, whether affirmative or negative, is an incorporeal hereditament and as such is a species of real property or land subject to the provisions of the statutes governing the conveyance or creation of estates in land. W.Va.Code, 36–1–1, and the Statute of Frauds, W.Va.Code, 36–1–3." (Citation omitted).

6.  We recognized the distinction between an "exception" and a "reservation" in *Malamphy v. Potomac Edison Co.*, 140 W.Va. 269, 273, 83 S.E.2d 755, 758 (1954):

> "An exception is language by which ' * * * the grantor withdraws from the operation of the

*See also* Syllabus Point 2, *Bennett v. Smith*, 136 W.Va. 903, 69 S.E.2d 42 (1952); Syllabus Point 2, *Harding v. Jennings*, 68 W.Va. 354, 70 S.E. 1 (1910).

More specifically, in the context of a right-of-way, in *Hoard v. Railroad Co.*, 59 W.Va. 91, 53 S.E. 278 (1906), we concluded that a deed which described the dimensions of a right-of-way, but failed to establish its beginning point, was insufficient to convey the right-of-way.[7] We stated this principle in Syllabus Point 1:

"A deed granting to a railroad company land for its right of way must contain on its face a description of the land in itself certain, so as to be identified, or if not in itself so certain, it must give such description as, with the aid of evidence outside the deed, not contradicting it, will identify and locate the land, otherwise the deed is void for uncertainty."

Other jurisdictions have evolved similar rules with regard to the sufficiency of the description of an easement created in a deed. One of the best summaries is given by the North Carolina Supreme Court in *Allen v. Duvall*, 311 N.C. 245, 249, 316 S.E.2d 267, 270 (1984):

"When an easement is created by deed, either by express grant or by reservation, the description thereof 'must either be certain in itself or capable of being reduced to a certainty by a recurrence to something extrinsic to which it refers.... *There must be language in the deed sufficient to serve as a pointer*

or a guide to the ascertainment of the location of the land.' *Thompson v. Umberger*, 221 N.C. 178, 180, 19 S.E.2d 484, 485 (1942)." (Emphasis in original; citations omitted).

*See also Dunlap Investors Ltd. v. Hogan*, 133 Ariz. 130, 650 P.2d 432 (1982); *Parkinson v. Board of Assessors of Medfield*, 395 Mass. 643, 481 N.E.2d 491 (1985); *Royse v. Easter Seal Soc'y for Cr. Children*, 256 N.W.2d 542 (N.D.1977); *Germany v. Murdock*, 99 N.M. 679, 662 P.2d 1346 (1983); *Lewis v. Midgett*, 448 S.W.2d 548 (Tex.Civ. App.1969).

From the foregoing law and aside from the merger question, it is our conclusion that the easement sought to be created in this case in the 1983 deed to Fayette Square was insufficient as a matter of law as to its description. The language in the 1983 deed that "[i]t is agreed and understood that there is common parking and rights-of-way or easements in, to and across all parcels for ingress and egress from and to all other parcels" was a totally inadequate description. In its outconveyance of Parcel One and Parcel Five, Fayette Square could have created an easement on Parcel One in favor of Parcel Five, but the language it used was totally inadequate. Fayette Square's deed of trust to Dollar Savings and the trustee's deed to New Market were entirely too general and nonspecific to create any easement rights on Parcel One, the 17.54 acre parcel.[8] The same result is true as to the easement language in Fayette Square's deed for Par-

---

conveyance that which is in existence, and included under the terms of the grant.' *Tate v. United Fuel Gas Co.*, 137 W.Va. 272, [280,] 71 S.E.2d [65, 70 (1952)]; 1 Devlin on Real Estate, Third Edition, § 221; 16 Am.Jur., Deeds, § 298. 'A reservation is " 'something arising out of the thing granted, not then *in esse*, or some new thing created or reserved, issuing or coming out of the thing granted, and not a part of the thing itself, nor of anything issuing out of another thing' " '. *Tate v. United Fuel Gas Co., supra;* 1 Devlin on Real Estate, Third Edition, *supra*."
We went on to state in *Malamphy:* "Notwithstanding that the language in a deed of conveyance may be phrased as a 'reservation', such language may be regarded and treated as an exception if it is necessary in order to carry out the plain purposes of the parties to the instru-

ment." 140 W.Va. at 273, 83 S.E.2d at 758. (Citations omitted).

7. In *Malamphy v. Potomac Edison Co.*, 140 W.Va. at 273, 83 S.E.2d at 758, we questioned the sufficiency of the description of two rights-of-way which were described as " 'the old county road near the river and the present county road above it.' " However, we did not decide whether the description was sufficient.

8. As earlier stated, the only language in the deed of trust was the phrase "subject to easements and restrictions of record." As a result of the inadequacy of the description in the deed of trust, the question of whether the trustee could establish a valid easement will not be addressed. The language in the deed from the trustee to New Market is set out in note 2, *supra*.

cel Five dated February 25, 1987, to Highway Properties.[9]

None of the easement language identified the location or width of the easements on the land. The descriptions contained nothing that would serve to specify in the slightest degree any means of geographically locating the easements on the property.

■ It should be noted that these rules regarding the sufficiency of the description of an easement contained in a deed apply only to the initial conveyance. The fact that subsequent deeds may refer generally to exceptions and reservations of record or may make no such references does not diminish the validity of the original easement if it previously was described adequately. The reason for this rule is because a purchaser of real property is on notice as to those matters which are contained in the chain of title to the property.

■ We discussed the law of notice at some length in *Tanning Co. v. Boom Co.*, 63 W.Va. 685, 60 S.E. 890 (1908), and concluded in Syllabus Points 1 and 2:

"1. Whatever is sufficient to direct the attention of a purchaser to prior rights and equities of third parties, so as to put him on inquiry into ascertaining their nature, will operate as notice.

"2. A party is not entitled to protection as a *bona fide* purchaser, without notice, unless he looks to every part of the title he is purchasing, neglecting no source of information respecting it which common prudence suggests."

*See also Bailey v. Banther*, 173 W.Va. 220, 314 S.E.2d 176 (1983). In addition, we gave this rather graphic summary of a purchaser's duty to examine the title to real property in *James v. Lawson*, 103 W.Va. 165, 170, 136 S.E. 851, 853 (1927), where we quoted this language from *Burwell's Administrators v. Fauber*, 62 Va. (21 Grat.), 446, [447] (1871):

" 'He must look to the title papers under which he buys, and is charged with notice of all the facts appearing upon their face, or to the knowledge of which anything there appearing will conduct him. He has no right to shut his eyes to the inlet of information and then say he is a bona fide purchaser without notice.' " (Citations omitted).

■ We recognize that our ruling in this case regarding the sufficiency of the description of the involved easement was not touched upon by the trial court. As earlier pointed out, we note the trial court concluded that the doctrine of merger abolished the easements. However, we find the easement to be void for the lack of an adequate description. Thus, we sustain the trial court's result on a different ground following the principle set out in Syllabus Point 3 of *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965):

"This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment."

*See also Sherwood Land v. Mun. Planning Comm'n*, 186 W.Va. 590, 413 S.E.2d 411 (1991); *McJunkin Corp. v. Human Rights Comm'n*, 179 W.Va. 417, 369 S.E.2d 720 (1988); *Chambers v. Sovereign Coal Corp.*, 170 W.Va. 537, 295 S.E.2d 28 (1982).

For the foregoing reasons, we affirm the judgment of the Circuit Court of Fayette County.[10]

Affirmed.

---

9. See note 3, *supra,* for the easement language in the 1987 deed.

10. We recognize that the trial court did not decide the second claim advanced by Highway

Properties that it has a way of necessity because of its landlocked position. This claim undoubtedly will be the subject of further litigation in the trial court.